CITY OF SOMERVILLE & another[1] *vs.* SOMERVILLE
MUNICIPAL EMPLOYEES ASSOCIATION.

Suffolk.  May 7, 1985. — August 15, 1985.

Present: GREANEY, C.J., CUTTER, & DREBEN, JJ.

*Civil Service,* Collective bargaining, Reassignment of personnel. *Municipal
   Corporations,* Collective bargaining, Officers and employees.

In an arbitration proceeding commenced by a city employees' union on
   behalf of two employees who claimed that the city had violated provisions
   of the applicable collective bargaining agreement by failing to pay them
   for work done in higher job classifications than their own during time
   when positions in these higher classifications were vacant, the arbitrator
   exceeded his authority by ordering the city to pay the employees for
   work done in the higher classifications, where the effect of the arbitrator's
   award was to promote the two employees to higher positions in violation
   of the civil service law and the city's charter. [599-601]

CIVIL ACTION commenced in the Superior Court Department
on June 22, 1984.

The case was heard by *George C. Keady, Jr.,* J.

*Philip G. Boyle* (*Robert W. Garrett* with him) for the plain-
tiffs.

*Alan J. McDonald* (*James F. Lamond* with him) for the
defendants.

*Francis X. Bellotti,* Attorney General, & *Lisa A. Levy,* As-
sistant Attorney General, for Civil Service Commission &
another, amici curiae, submitted a brief.

GREANEY, C.J. The city of Somerville and its mayor have
appealed from a judgment of the Superior Court confirming
an arbitration award which found that the city had violated its
collective bargaining agreement with the association by failing

---

[1] The mayor of Somerville.

to grant additional pay to two employees of the Somerville assessors' office. We conclude that the arbitrator exceeded his authority by making an award which conflicts with the civil service law.

The arbitrator's decision contains the following information. The Somerville board of assessors consists of five members who are elected. The board selects one of its members to serve as chairman and this individual serves as the department head of the assessors' office. The employees of the assessors' office are appointed by the mayor. At the time of this dispute, the office had seven full-time positions: an executive secretary, a head clerk, three principal clerks, a senior clerk and typist, and a clerk-typist. The position of executive secretary was located in bargaining unit A, which covers supervisory employees. The remaining positions were in bargaining unit B. The employees of bargaining unit B are represented by the association and have a collective bargaining agreement with the city. Article XXI, § 14, of that agreement provides that "[e]mployees who work in higher classifications (i.e. any classification that pays a higher rate of pay than the classification in which the employee regularly works) for three or more consecutive workdays shall receive the rate of pay of the higher classification for all days so worked computed from the first day."

On August 12, 1983, the executive secretary of the assessors' office retired. The head clerk, Mary Papadinis, was on vacation at the time. The chairman of the board of assessors directed principal clerk Janet Legg to assume the duties of executive secretary on an acting basis until Papadinis' return. During the next two weeks, Legg performed the duties of executive secretary. By letter dated August 16th, the chairman informed the mayor of Legg's new assignment. About the same time, the mayor was becoming alarmed about the number of such assignments in the city's various departments for which employees were claiming extra compensation. On August 24th, the mayor distributed a memorandum to all department heads informing them that "[n]o individual should be performing tasks outside of his job description without mayoral approval on a timely written request."

On September 1, 1983, Papadinis returned from vacation. The chairman of the board of assessors directed Papadinis to assume the duties of executive secretary on an acting basis. Papadinis in turn directed Legg to fill the position of head clerk on an acting basis. By letter dated September 2, 1983, the chairman requested pay for Papadinis and Legg at the rate of the higher positions, which the mayor refused to approve. Papadinis and Legg continued to perform the duties ordinarily performed by the executive secretary and head clerk, respectively, even after they became aware of the rejection of their extra pay requests.

On September 7th, the chairman posted the position of executive secretary and sent a copy of the posting to the mayor. On September 8th, the mayor advised the chairman in writing that he had not given approval for the posting or the filling of the vacancy and ordered that the posting be withdrawn. At a meeting on September 10th, the mayor informed the board of assessors that the position of executive secretary might be eliminated in a proposed reorganization of the office. The mayor also indicated that he did not want the position filled until he had an opportunity to review the recommendations of the State Department of Revenue which was, at the time, examining the assessors' office.

At that same meeting, the mayor told Papadinis that she had authority to supervise the office as head clerk and that she should do so. The mayor indicated that Papadinis should advise the chairman (or, in his absence, the mayor) of any situation which required her to perform additional duties. The mayor also told Papadinis that she should attend the meetings of the board of assessors and transcribe the minutes of those meetings. The chairman in turn advised Papadinis that she should perform the duties of executive secretary. Papadinis testified that, at the end of the meeting, she understood that the position of executive secretary was not to be filled permanently at that time, but that she was to continue to perform the duties of executive secretary on an acting basis. The arbitrator found that understanding justified. The mayor continued to refuse to approve any extra compensation for either Papadinis or Legg.

The association filed a grievance on September 14th, asserting that the city was violating § 14 of art. XXI of the collective bargaining agreement by failing to pay Papadinis and Legg for work in higher classifications. The grievance led to arbitration. The arbitrator found for the association and ordered the city to pay Legg as acting executive secretary for the time she spent in that job, and as acting head clerk for all the other weeks she had worked[2] or would work in that capacity until her supervisor (Papadinis) or the chairman of the board of assessors directed her to cease performing the duties of head clerk and such duties were in fact removed from her. The arbitrator further ordered the city to pay Papadinis as acting executive secretary for all the weeks she had worked or would work in that capacity until such time as the chairman directed her to cease performing the duties of executive secretary and such duties were in fact removed from her.

1. We first state principles of civil service law which establish the context for resolution of the case. The civil service law, G. L. c. 31, establishes a comprehensive plan for the appointment of individuals to civil service positions, whether on an original or a promotional basis, and whether permanent or temporary. The law vests considerable authority in the "appointing authority,"[3] who retains the sole power to decide whether to fill vacancies on either a permanent or temporary basis. Cf. *Kenney* v. *McDonough*, 315 Mass. 689, 693 (1944). Moreover, in filling any vacancy, even temporarily, the appointing authority is required to follow the carefully prescribed requirements set forth in c. 31. Failure of an appointing authority in filling a position to follow the requirements will render the appointment invalid. *Ibid.* See also *Reardon* v. *Director of Civil Serv.*, 318 Mass. 173, 175 (1945).

---

[2] It is unclear what the arbitrator intended by this portion of his award since he also found that Legg requested, and received, additional compensation for the period in October, 1983, when she served as head clerk performing the duties of that job.

[3] The arbitrator appears to have found that the mayor is the appointing authority for employees of the assessors' office in Somerville. Under G. L. c. 31, § 1, only the "appointing authority" has the "power to appoint or employ personnel in civil service positions."

An appointment to a civil service position may be either "original" or "promotional." G. L. c. 31, §§ 6, 7. See *Joseph* v. *Administrator of the Div. of Personnel Admn.*, 11 Mass. App. Ct. 943, 943 (1981). In order to make an original appointment, the appointing authority must requisition the administrator of the civil service system[4] for a "certification from an eligible list established as the result of a competitive examination." G. L. c. 31, § 6. See e.g., *Hartigan* v. *Civil Serv. Commrs.*, 252 Mass. 323, 325 (1925). Promotional appointments must also be filled by certification from an eligible list, unless the promotion of an employee from one "title"[5] to the next higher title in the same "series"[6] in the same departmental unit is approved by the administrator based upon that employee's seniority in his or her present position and demonstrated competence, by examination, to perform the duties of the higher title. G. L. c. 31, §§ 7, 8. An appointing authority may make a temporary promotional appointment to a temporary position or to fill a temporary vacancy in a permanent position in accordance with the requirements of G. L. c. 31, §§ 7 and 8.

If no eligibility list exists, and certain other statutory requirements are met, the appointing authority, with the approval of the administrator, may make a provisional promotion of a civil service employee in one title to the next higher title in the same departmental unit. G. L. c. 31, § 15. However, no provisional promotion, on the municipal level, can be made without express authorization from the administrator. See *Kenney* v. *McDonough*, 315 Mass. at 693. "Provisional appointments or appointments through noncompetitive examinations are permitted only in what are supposed to be exceptional instances . . . and must be terminated upon the establishment of an

---

[4] The administrator is the personnel administrator of the Department of Personnel Administration. G. L. c. 31, § 1.

[5] A "title" is the descriptive name applied to a position or to a group of positions having similar duties and the same general level of responsibility. G. L. c. 31, § 1.

[6] A "series" is a vertical grouping of related titles so as to form a career ladder. G. L. c. 31, § 1.

eligible list." *McLaughlin* v. *Commissioner of Pub. Works*, 304 Mass. 27, 29 (1939).[7]

Finally, G. L. c. 31, § 68, requires the appointing authority to report in writing to the administrator "any appointment or employment, promotion, demotion, transfer, change in duties or pay, reinstatement," and a host of other employment changes not here relevant. Based upon these reports, G. L. c. 31, § 71, requires the administrator to prepare rosters of all civil service positions, and of all persons who are legally employed in such positions, whether on a temporary or a permanent basis. The administrator files a copy of each roster with the municipal officer responsible for paying the salaries of a municipality's civil service employees. *Ibid.* Section 71 expressly provides that this payment officer "shall not pay any salary or compensation for service rendered in any civil service position . . . to any person whose name does not appear on the appropriate roster, as amended from time to time, as the person in such position."

2. We agree with the city and the amici curiae[8] that the arbitrator's award, in effect, promotes Papadinis and Legg to higher positions in violation of the civil service law.

---

[7] Under G. L. c. 31, § 31, an appointing authority, without submitting a requisition to the administrator and without complying with other provisions of the civil service law, may make an emergency appointment to a civil service position for not more than thirty working days during a sixty-day period, provided the circumstances necessitating the appointment could not have been foreseen and the public business would be seriously impeded by the time lapse incident to the normal appointment process. The appointing authority must, however, immediately notify the administrator in writing of the reasons for the appointment and its expected duration. Section 31 also provides that, with the administrator's consent, an emergency appointment may be renewed for an additional thirty working days but that no person is permitted to receive more than one emergency appointment or one such appointment and renewal in any twelve-month period (except in certain instances where the public health, safety or service would otherwise suffer).

[8] The city's position on appeal has been supported by the amici curiae, the Civil Service Commission and the Department of Personnel Administration, for which bodies jointly the Attorney General has filed a brief.

The positions of executive secretary, head clerk and principal clerk constitute separate job titles within the meaning of the administrator's classification plan.[9] G. L. c. 31, § 1. When a vacancy occurs in one of these positions, by definition, the assignment of a person employed in one title to a higher title in the same or a different series constitutes a promotional appointment which may only be made in compliance with the procedures set forth in the civil service law. Otherwise, an employer could circumvent the requirements of the civil service law by simply assigning the duties of the vacant higher position to another employee for an indefinite period of time.

The collective bargaining agreement in this case makes the promotions and the filling of vacancies in the jobs in issue subject to the civil service law and that law controls any provision of the agreement in conflict with it. See *National Assn. of Govt. Employees* v. *Labor Relations Comm.*, 17 Mass. App. Ct. 542, 544-545 (1984); *Everett* v. *Teamsters, Local 380*, 18 Mass. App. Ct. 137, 138 n.1, 140 (1984). The mayor is the appointing authority in Somerville, and he, not the board of assessors, or its chairman, decides whether any vacancy or vacancies created by the retirement of the executive secretary ought to be filled, permanently or temporarily. There is no question that the mayor, as the appointing authority, did not

---

[9] The job titles are set forth in the "Municlass Manual," a municipal classification plan prepared by the administrator and commission as required by G. L. c. 31, § 5 (*b*). All municipal job classification plans *must*, under the civil service law, conform to the manual. The positions in question all fall within the "general administrative, clerical and office services group," which contains both a "clerical" series and an "executive secretary" series. According to the Municlass Manual, at 143-144, the clerical series is further subdivided into the following titles:

        0301A Clerk
        0301B Senior Clerk
        0301C Principal Clerk
        0301D Head Clerk
        0301E Head Administrative Clerk

There is only one title, executive secretary — 0306A, in the executive secretary series. Municlass Manual, at 145. As will be discussed in part 3 of this opinion, the Manual contemplates reasonable flexibility in jobs within the same series so that duties can be assigned and reassigned in the interests of efficiency.

submit a request to the administrator for the promotional appointment of either Papadinis or Legg pursuant to G. L. c. 31, §§ 6 and 7. There also was no authorization from the administrator to promote Papadinis or Legg to the next higher job title pursuant to G. L. c. 31, § 8, nor any authorization to make a provisional appointment or promotion of either of them pursuant to G. L. c. 31, §§ 12 through 15.[10] Thus, any purported appointments under the provisions of the civil service law are void, and neither woman is entitled to the salary of the higher position. See *Seney* v. *Board of Health of Northampton*, 314 Mass. 272, 276-277 (1943). Cf. G. L. c. 30, § 24B (giving the administrator control over temporary assignments of State civil service employees from lower to higher grades). It follows that the arbitrator's award exceeds his authority since the award requires the city to perform acts which are contrary to the civil service law.

3. We are not dissuaded from this conclusion by the argument offered to support the awards. The argument proceeds in part on the arbitrator's conclusion that § 36 of part VI of the Somerville city charter, St. 1899, c. 240 (as in effect during the time periods in question), gives the chairman of the board of assessors control over all appointments in the assessors' office.[11] Section 36, however, principally confers on the chairman the right to recommend appointments and to supervise the day-to-day work of the office and to make personnel assignments accordingly. Section 44 of part VI of the Somerville charter provides that permanent appointments can be made only with the approval of the mayor.[12] To the mayor also falls

---

[10] The arbitrator did not consider whether the appointments could qualify as emergency appointments under G. L. c. 31, § 31, see note 7, *supra*. No contention is made on appeal that they might so qualify. We, therefore, do not consider the issue.

[11] Section 36 provides, in pertinent part, that "[t]he chairman . . . shall have general supervision and control of all matters appertaining to his department." See now (effective July 8, 1985, St. 1985, c. 23, superseding the prior § 36).

[12] Section 44 provides that "[t]he several administrative boards and officers named in [part VI] having charge of departments shall, subject to the

the final determination whether the vacancy in the executive secretary's position ought to be filled. We also assume, without deciding, that the mayor could decide that the functions technically assigned to the executive secretary could be adequately performed by persons in the clerical series of job titles.

The association also argues that the employees were not promoted to higher positions but were merely moved to different pay classifications. It contends that the civil service law is concerned only with job titles, not with pay classifications, the latter being left to the discretion of the municipality. Thus, the association concludes that the civil service law and the collective bargaining agreement can be effectively reconciled by an interpretation of the agreement which leaves pay entitlement exclusively to the collective bargaining process.

It is clear from their brief, however, that the administrator and Civil Service Commission are deeply concerned about the use of so-called unauthorized "out-of-grade" promotional appointments, whether provisional or temporary, to circumvent the requirements of the civil service law. As has been observed in a study of the civil service system, such appointments should be avoided because they "often are used to reward employees beyond the salary limits of their permanent positions." Ernst & Whinney, The Special Commission on Civil Service Reform 93 (1980). This breeds favoritism, which tends to undermine the purpose of the civil service law — "'[t]o secure the best qualified persons available for all positions in the state and local service, encouraging competition and offering an opportunity for all qualified persons to compete.'" *Sholock* v. *Civil Serv. Commn.*, 348 Mass. 96, 99 (1964).[13] The decisive fact

---

approval of the mayor, appoint, employ and discharge, at pleasure, all subordinate officers, clerks, assistants and laborers in their respective departments, and shall have the immediate direction and control of all executive and administrative business therein. They shall at all times be accountable to the mayor for the proper discharge of their duties."

[13] Although § 14 of art. XXI of the collective bargaining agreement uses the words "classification" and "higher classifications," it is clear from the job titles and salary schedules which are incorporated in the agreement that § 14 deals with service in a higher job title within the same series.

in this case remains that the arbitrator's award has condoned unauthorized promotional appointments (now apparently served in by each woman for more than one year) made in violation of the civil service law by the chairman of the board of assessors, who is not the appointing authority.[14] Moreover, as the administrator and the commission argue, payment to the two employees, in the circumstances present here, is also squarely prohibited by §§ 68 and 71 of c. 31, which: (a) require that any "change in [a civil service employee's] duties or pay" be reported to the administrator so that a payment roster can be prepared, and (b) prohibit payment to a civil service employee whose name does not appear on the roster as lawfully in his or her position. There is no indication that either employee's name in this case appears on the roster in the higher position to which she claims appointment.

The association argues that the assessors' office will not be able to function effectively unless the chairman can reassign duties, and that he cannot make assignments without complying with art. XXI, § 14, of the collective bargaining agreement. The argument misperceives the nature of the chairman's authority. The chairman had the right, until a reasonably prompt decision was made about filling the vacancy, to direct employees in related jobs to perform duties for which they are qualified so that the employees could be assigned in the interests of efficiency and economy. As the Civil Service Commission and the administrator point out, the Municlass Manual, as a State-wide classification plan, makes some broad allowance for such assignments. The manual indicates (at 143) that the duties of the positions are meant to be generally similar in content, and interrelated in level of responsibility.[15] The overlapping nature

---

[14] As previously noted, it should be kept in mind that an acute need for a prompt appointment to fill a vacancy can be satisfied under the civil service law in a variety of ways, including a temporary appointment, a provisional appointment, or an emergency appointment.

[15] According to the manual, a head administrative clerk, a head clerk, and a principal clerk all must (a) possess either a "high" or "considerable" degree of decision making authority and have either a "thorough" or "complete" knowledge of operations, and (b) provide supervision to other employ-

of the duties would permit the chairman as department head, as the need arose, to instruct an employee in any one of the three positions to perform some or all of the duties of the other two positions without contravening civil service law. The chairman, for example, had that authority with respect to Papadinis performing the duties presently assigned to the executive secretary since the description given by Somerville of the position of head clerk expressly provides that the head clerk is to perform all the executive secretary's duties during the latter's absence. Therefore, it would have been the chairman's prerogative, as department head, to assign Papadinis, as head clerk, to do some or all of the duties theretofore performed by the executive secretary. In the same fashion, the chairman could have assigned some or all of Papadinis' duties as head clerk to Legg, and, if necessary, reallocate the latter's duties to the other principal clerks. All of this simply recognizes that, within the limits prescribed by the manual, the appointing authority, and heads of small departments entrusted with necessary public functions, have the managerial right to use flexible job descriptions so that employees can be assigned other duties which they are qualified to perform in the interests of efficient operation.

The judgment is reversed. A new judgment is to be entered which vacates the award since it exceeds the arbitrator's authority.

*So ordered.*

ees. The executive secretary is required to perform some secretarial duties and to transcribe.