CITY OF FALL RIVER & others[1] vs. TEAMSTERS UNION,
LOCAL 526, & another.[2]

No. 88-P-732.

Bristol. May 12, 1989. — August 4, 1989.

Present: DREBEN, KAPLAN, & KASS, JJ.

*Civil Service*, Collective bargaining. *Municipal Corporations*, Collective bargaining, Officers and employees. *Arbitration*, Authority of arbitrator.

The civil service law, G. L. c. 31, does not preclude the application of a seniority clause in a collective bargaining agreement for purposes of choosing among qualified candidates for provisional appointment to a vacant civil service position. [651-653]

A grievance filed by a civil service employee claiming a superior right, on the basis of seniority, to a provisional appointment that the appointing authority had determined to fill was arbitrable under the applicable collective bargaining agreement. [653-654]

CIVIL ACTION commenced in the Superior Court Department on July 15, 1987.

The case was heard by *William H. Carey*, J., on a motion for summary judgment.

*Mark G. Kaplan* for the defendants.
*Ralph A. Roberts* for the plaintiffs.

KASS, J. When on December 31, 1985, the incumbent incinerator maintenance foreman (the "IMF") at the Fall River incinerator retired, the board of public works of that city appointed James Machado provisionally (see G. L. c. 31, §§ 12-14) as his successor. Henry Yokel, an incinerator shift foreman, claimed a superior right to the job on the basis of a seniority

---

[1] Ronald Costa, individually, and as commissioner of public works of Fall River, and John Souza, individually, and as deputy commissioner of solid waste disposal of Fall River.

[2] Alfred Andrade.

clause in the governing collective bargaining agreement. The core question over which the parties contend is whether the civil service law (G.L. c. 31) overrides the seniority clause and, thereby, places Yokel's claim beyond arbitration. We conclude that the claim was arbitrable and that the arbitrator's award in favor of Yokel should have been confirmed.

Yokel, as he dryly put it in his grievance, had "been in the incinerator since it first opened its doors." His grievance went to arbitration. The arbitrator found that Yokel was qualified to be the IMF and was the most senior qualified applicant. Machado, by the estimation of the appointing authority, although junior to Yokel in service, was more qualified; indeed, the most qualified.

Ordinarily, when a vacancy in a civil service job occurs, the appointing authority selects from a list of eligibles drawn up as a result of a competitive examination. G. L. c. 31, § 6. *Somerville* v. *Somerville Municipal Employees Assn.*, 20 Mass. App. Ct. 594, 597-598 (1985). No list of eligibles was available for the IMF post and the department of public works chose to make a provisional appointment, conformably with G. L. c. 31, §§ 12, 13, and 14. The appointment went to Machado as the most qualified applicant, although the collective bargaining agreement which covered the incinerator employees provided, "The City agrees to adhere to the principle of seniority whenever possible. . . ."

Assuming the correctness of the city's view of Machado as more qualified, the arbitrator asked himself, "[D]oes the Civil Service Law prohibit the appointment of the senior qualified applicant . . . with provisional status?" The arbitrator decided that there was no such prohibition and ordered that Yokel be appointed IMF with full back pay.[3] On Fall River's application (G. L. c. 150C, § 11), a judge of the Superior Court vacated the arbitration award, having decided that the civil service law, in context, was inconsistent with the labor agreement and superseded that agreement. Under the civil service law, the judge

---

[3] The arbitrator specified that Yokel should first be appointed for a ninety-day trial and training period.

reasoned, the municipality's power of appointment was non-delegable. Accordingly, the judge concluded, the arbitrator had acted beyond his authority.

1. *Relationship of the labor contract to the civil service law.* Judicial review of an arbitration award proceeds with a disposition strongly favorable to the arbitration process. We do not reexamine determinations of fact or law except in the limited "strong medicine" circumstances set forth in G. L. c. 150C, § 11. *School Comm. of West Springfield* v. *Korbut,* 373 Mass. 788, 792 (1977). *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187-188 (1984). *Worcester* v. *Borghesi,* 19 Mass. App. Ct. 661, 665 (1985). One of those circumstances is arbitrators acting in excess of their powers. G. L. c. 150C, § 11(*a*)(3).

Chapter 31 of the General Laws, the civil service law, is not one of the statutes enumerated in G. L. c. 150E, § 7(*d*), and, therefore, may not be superseded by a collective bargaining agreement. *National Assn. of Govt. Employees, Local R1-162* v. *Labor Relations Commn.,* 17 Mass. App. Ct. 542, 544 (1984). *Everett* v. *Teamsters, Local 380,* 18 Mass. App. Ct. 137, 138 n.1, 140 (1984). See also *School Comm. of Holyoke* v. *Duprey,* 8 Mass. App. Ct. 58, 64 (1979). It remains to inquire, however, what G. L. c. 31 has to say about the appointment of provisional employees and whether, regarding that subject, the civil service law so occupies the field as to crowd out any seniority clauses in collective bargaining agreements.

An underpinning of the civil service structure is that original and promotional appointments will be made from a list of persons declared eligible on the basis of competitive examination. G. L. c. 31, §§ 6-8. *Somerville* v. *Somerville Municipal Employees Assn.,* 20 Mass. App. Ct. at 597-598. If the appointing authority elects to appoint a person other than one who stands first on the list, it must explain its reasons in writing to the State personnel administrator. G. L. c. 31, § 27. To account for those positions for which no list of eligible persons and, perhaps, no competitive examination is available, the statutory scheme offers the possibility of provisional appointments. These require authorization from the personnel adminis-

trator and are regarded as "permitted only in what are supposed to be exceptional instances" which will end when a list of eligibles becomes available. G. L. c. 31, §§ 12-14. *McLaughlin v. Commissioner of Pub. Works*, 304 Mass. 27, 29 (1939). *Somerville v. Somerville Municipal Employees Assn.*, 20 Mass. App. Ct. at 598-599.

Appointing authorities and the Civil Service Commission need to be diligent about devising the appropriate competitive examination sooner rather than later so that the provisional appointment will, indeed, be short lived as intended. Otherwise the employment process becomes vulnerable to favoritism and the object of securing the best qualified person for a position through objective criteria will be bypassed. *Somerville v. Somerville Municipal Employees Assn.*, 20 Mass. App. Ct. at 602.

Unlike the specific selection criteria which govern permanent civil service appointments, provisional appointments need to meet only the general standard that "the person proposed for the provisional appointment meets the proposed requirements for appointment to the position and possesses the knowledge, skills and abilities necessary to perform such duties." G. L. c. 31, § 13, as appearing in St. 1978, c. 393, § 11.[4] The elements of competition and comparative selection so integral to the permanent selection process are absent from the making of a provisional appointment, presumably for the reason that a provisional appointment is a standby affair and that, therefore, the same rigor of selection procedure is not necessary.

---

[4] See also G. L. c. 31, § 14, as appearing in St. 1978, c. 393, § 11, which provides that a "provisional appointment . . . shall be terminated forthwith whenever . . . the person appointed does not, in fact, possess the approved qualifications or satisfy the approved requirements for the position." Section 15, as appearing in St. 1978, c. 393, § 11, provides, "If there is no such employee in the next lower title who is qualified for and willing to accept such a provisional promotion the administrator may authorize a provisional promotion of a permanent employee in the departmental unit without regard to title, upon submission to the administrator by the appointing authority of sound and sufficient reasons therefor, satisfactory to the administrator." Section 15 goes on to say, "The administrator shall terminate any provisional promotion if . . . the person provisionally promoted does not possess the qualifications or satisfy the requirements for the position."

Yokel was found by the arbitrator to be qualified to be the IMF and, as such, met the requirements for provisional appointment. Nothing in §§ 12, 13, and 14 forecloses the use of seniority as a criterion to choose among qualified applicants. Cf. *Chief of Police of Westford* v. *Westford*, 365 Mass. 526, 533 (1974). The use of seniority as an objective criterion is scarcely foreign to the civil service law. See G. L. c. 31, § 39, relating to separation from employment, and § 40, relating to reemployment. Section 33 is devoted entirely to the definition and computation of seniority. See also §§ 44 and 56, in which seniority plays a role.

We are of opinion that the provisional appointment provisions of the civil service law do not preclude the application of a seniority clause in a collective bargaining agreement for purposes of choosing among qualified candidates for a position. Although it is possible that a person of inferior ability may thereby be placed in a vacancy, appointing authorities ought, for that very reason, to be stimulated to limit the duration of a provisional appointment by adhering to the policy of open competitive examinations encouraged by the civil service law.

2. *Whether the appointment question could be delegated to arbitration.* Staffing and appointment decisions which are bound up with questions of educational policy are matters within the exclusive domain of school committees and may not be delegated to arbitration. *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 689-690 (1976). *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 213-214 (1982), *S.C.*, 395 Mass. 232 (1985). *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 25 Mass. App. Ct. 903, 904 (1987). See also G. L. c. 71, §§ 37 and 38. Similarly, personnel decisions have been determined to be nondelegable in connection with police assignments *(Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 502 [1970],[5] *Boston* v. *Boston Police Patrolmen's Assn.*, 403 Mass. 680, 684 [1989])[6] and part-time work assignments in public transpor-

---

[5] See G. L. c. 41, § 97A.

[6] See St. 1906, c. 291, as amended by St. 1962, c. 322, § 1.

tation (*Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transportation Authy.*, 392 Mass. 407, 413-417 [1984]).[7] Whether a civil service vacancy ought to be filled at all, i.e., a staffing level decision, is nondelegable. *Somerville* v. *Somerville Municipal Employees Union*, 20 Mass. App. Ct. at 600. So, for example, whether to fill the IMF post at all is a municipal management decision not delegable to arbitration. Making a provisional appointment to a position that the appointing authority has determined to fill raises no issues of policy or legislative mandate which might insulate the process from the provisions of a collective bargaining agreement. Recourse to seniority in filling a civil service job does not distort any policy of the civil service law or any other statute called to attention.

The judgment is reversed and a judgment is to enter confirming the arbitrator's award.

*So ordered.*

---

[7] See G. L. c. 161A, § 19.