Secretary of Administration *v.* Massachusetts Org. of State Eng'rs & Scientists.

SECRETARY OF ADMINISTRATION *vs.* MASSACHUSETTS
ORGANIZATION OF STATE ENGINEERS & SCIENTISTS.

Suffolk. November 5, 1990. - December 17, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Commonwealth*, Collective bargaining, Officers and employees. *Arbitra-
tion*, Arbitrable question, Commonwealth, Authority of arbitrator,
Award, Collective bargaining. *Contract*, Collective bargaining contract.
*Civil Service*, Reassignment of personnel.

A grievance filed by a union on behalf of demoted State employees alleg-
ing that the employees were performing the duties of a higher classifi-
cation for a lower salary was within the purview of disputes contem-
plated by the parties as proper subjects for arbitration under the
applicable collective bargaining agreement, and the arbitrator properly
exercised jurisdiction to hear the grievance. [839-840]

In an arbitration proceeding the arbitrator correctly decided the issue to be
determined was the right of certain employees in proper civil service
classifications to be compensated under the applicable collective bar-
gaining agreement for the performance of duties of higher classifica-
tions. [840-841]

In a proceeding to confirm an arbitration award in a labor dispute involv-
ing State employees, the judge properly rejected the argument of the
Secretary of Administration that the arbitrator exceeded his authority
by making an award where there were no uncommitted appropriated
funds to pay additional compensation that might be due, where the
availability of appropriated funds had not been an issue in the arbitra-
tion and, in any event, where the secretary had not carried the burden
of showing a need for a judicial determination as to the availability of
funds to pay the award. [841-842]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 12, 1987.

The case was heard by *J. Owen Todd*, J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Rosemary Ford* for the plaintiff.

*Nathan S. Paven* for the defendant.

GREANEY, J. The Secretary of Administration (secretary) brought a complaint in the Superior Court seeking to vacate or modify an arbitrator's award which indicated that certain employees of the Department of Public Works (DPW) were entitled to additional compensation for work performed. See G. L. c. 150C, §§ 11, 12 (1988 ed.). The Massachusetts Organization of State Engineers and Scientists (union) filed an answer and moved to confirm the award. See G. L. c. 150C, §§ 10, 11 (*d*) (1988 ed.). Both parties filed motions for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974). A judge of the Superior Court denied the secretary's motion and allowed the union's motion. A judgment entered confirming the award, and the secretary appealed. We transferred the case to this court on our own motion. We affirm the judgment.

The background of the case is as follows. The secretary acts as the "employer" on behalf of the Commonwealth for collective bargaining purposes. G. L. c. 150E, § 1 (1988 ed.). The union is a labor organization which acts as the exclusive bargaining representative of certain employees of the Commonwealth employed in various engineering and science related titles. Among the employees represented by the union are employees in the DPW.

In fiscal year 1982, as a result of financial constraints, the Legislature decreased the DPW's operating budget by five million dollars and cut its position quota from 4,400 to 4,173. In order to stay within budget, the DPW laid off over 300 employees. In addition, the DPW returned many permanent civil service employees holding positions in a higher grade, as certified temporary or provisional employees, to their lower permanent civil service titles. The DPW issued instructions and made efforts to ensure that job duties were altered to correspond with the lower certifications and lower salaries. The union alleged, nonetheless, that many employees who

had been demoted continued to perform duties of the higher certification while receiving the lower salary.

Grievances were filed under the collective bargaining agreement (agreement), which led to arbitration. The union challenged the layoffs and the demotions, and argued that there were sufficient funds available to maintain the previous year's employment level. There were two separate arbitration proceedings. In the first arbitration, the arbitrator concluded that he lacked jurisdiction to review the layoffs because the decision to lay off personnel was an exclusive managerial prerogative. He found, however, that he had jurisdiction over those demotion cases in which it was alleged that DPW employees were performing the duties of a higher classification for a lower salary.

In the second arbitration the parties agreed that the arbitrator would consider several "illustrative" cases of affected DPW employees who claimed that they should be paid for extra work out-of-grade. In some cases, the arbitrator found that employees were not actually performing higher duties and, therefore, were not entitled to added compensation. In other cases, where employees were performing duties of a higher grade than was commensurate with their actual civil service titles and salaries, the arbitrator found a violation of the agreement. He concluded that the grievants whose claims had been sustained were entitled to relief but left it to the parties to resolve what amounts might be due. The arbitrator retained jurisdiction if the parties could not finally resolve the pay issues. The present lawsuit followed.

1. *Arbitrability.* The union's grievances concerning the work done by demoted DPW employees arose under art. 16, § 2, of the agreement, which provides as follows:

> "Any employee who is assigned by his/her appointing authority to a vacant position in a higher grade for a period of more than thirty days shall receive the salary rate for the higher position from the first day of the appointment, provided such appointment is made pursuant to civil service law when applicable."

The secretary argues that since money was lacking to fund any higher position that was being filled by a demoted employee, no "vacant position" could exist within the meaning of that term in the provision. As a result, the secretary urges that the arbitrator lacked subject matter jurisdiction to hear the grievances. The union contends that the existence of a "vacant position" does not necessarily depend on the availability of funds and also maintains that there were sufficient funds to pay the employees for their work.

The question of arbitrability, which, in the present circumstances, is for the court to resolve, depends on whether the parties expressed an intention to arbitrate this particular dispute. Under the secretary's interpretation of art. 16, § 2, of the agreement, there could be no arbitration whenever a governmental employer decreases the salaries and rank of its employees while requiring them to perform duties of a higher civil service position. Absent a clear expression of such intent, we cannot accept this interpretation. Disputes over salary and work levels have always been classic subjects for arbitration under collective bargaining agreements. See G. L. c. 150E, § 8 (1988 ed.); *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 690 (1976).

The arbitrator decided that even under the secretary's approach, the dispute over the unavailability of funding, by itself, "move[d] the issue into the range of arbitrability." The arbitrator also noted with approval the union's argument that the secretary's position on the existence of "vacant positions" was illogical because it essentially permitted the governmental employer to "create a vacancy by removing employees from their positions; deny the continued existence of the vacancy; continue the employees in their previous assignments; and then refuse the aggrieved employees access to the contractual grievance procedures." The grievances were within the purview of disputes contemplated by the parties as proper subjects for arbitration under the agreement.

2. *Merits.* The secretary argues that the arbitrator exceeded his authority because the award violates various provisions of the civil service law, including the law governing

the assignment of employees from lower to higher grades. See G. L. c. 30, § 24 (1988 ed.); G. L. c. 150C, § 11 (a) (3) (1988 ed.); G. L. c. 150E, § 7 (1988 ed.). In support of this argument, the secretary relies on *Somerville* v. *Somerville Mun. Employees Ass'n*, 20 Mass. App. Ct. 594 (1985), which he asserts governs this case. In *Somerville*, two employees of the city's assessor's office were assigned to perform duties of a higher classification because of a vacancy created by another employee's retirement. The promotional assignments were never approved by the mayor, who was the appointing authority. (In fact, the mayor disapproved of the assignments.) The Appeals Court vacated an arbitrator's award which granted damages to the employees because the award had the effect of actually promoting the two employees to higher positions in violation of the civil service law and the city's charter.

The *Somerville* decision, as the arbitrator recognized, is not on point. That case dealt with promotions which were improper because they lacked the approval of the appointing authority and the civil service administrator. Here, the affected employees held proper original civil service positions. They were demoted to those positions and were required to perform duties associated with higher job classifications. The arbitrator correctly decided that the quarrel between the parties was not, as it was in the *Somerville* case, over civil service classifications and unauthorized appointments to promotional positions, but rather over the right of employees holding proper civil service classifications to be paid for the performance of duties assigned to higher functional titles.

The secretary argues that the arbitrator exceeded his authority by making an award when there were no uncommitted appropriated funds available to the DPW to pay additional compensation that might be due under art. 16, § 2. In making the argument, the secretary directed attention to *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 395 Mass. 232, 237 (1985), which states the general principle, applicable to public sector arbitration, that "[a]n arbitrator has no authority to award damages for breach of a

provision in a collective bargaining agreement where no appropriated funds are available to implement that provision."

The judge properly rejected the secretary's argument. The arbitrator's opinions indicated that managers at the DPW had ignored strict instructions not to have demoted employees work outside of their original classifications and that the union had furnished a "plethora of detail" to support its contention that funds would be available to pay any additional compensation that might be due.[1] The arbitrator's award, however, did not purport to calculate or assess any damages, but instead left it to the parties to resolve pay issues, under the guidelines of the facts found in the "illustrative cases," with the parties retaining the right to seek additional arbitration "if resolution is not reached."

Based on the arbitrator's opinions, and the provisional nature of the remedy framed by him, the judge properly could have concluded that the availability of funds was not directly an issue in the arbitration beyond a general and unsupported allegation that funds might not exist. Thus, the judge could have decided that if lack of money had been a critical issue, the arbitrator's opinions placed the burden on the secretary to show that judicial proceedings were necessary to determine whether the award could not be enforced in any respect because of lack of funds. See *Boston Teachers Union, Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 466 (1976). The secretary made no such showing. In the circumstances, the judge acted correctly in allowing the union's motion for summary judgment.

*Judgment affirmed.*

---

[1]On this point, the arbitrator referred to the union's evidence of the DPW's "overstatement of negotiated increases, the availability in December 1981 of transportation bond funds to pay State engineers' salaries, [and] the existence of a DPW surplus at the end of FY 1982."