## Town of Dedham *vs.* Dedham Police Association (Lieutenants & Sergeants).

No. 97-P-0303.

Norfolk. April 13, 1998. - March 5, 1999.

Present: Armstrong, Lenk, & Beck, JJ.

*Civil Service,* Collective bargaining, Decision of Civil Service Commission, Police. *Contract,* Collective bargaining contract. *Public Employment,* Collective bargaining, Police. *Municipal Corporations,* Collective bargaining, Police. *Police,* Collective bargaining, Vacation. *Arbitration,* Scope of arbitration.

An arbitrator's interpretation of a collective bargaining agreement did not exceed the scope of the reference, nor did the award violate a law, and a judge of the Superior Court should have confirmed the award. [419-422]

Civil action commenced in the Superior Court Department on April 26, 1996.

The case was heard by *Judith A. Cowin,* J.

*Robert L. Wise* (*Robert O. Berger* with him) for the defendant.
*John V. Woodard* for the plaintiff.

Armstrong, J. In 1991 the Civil Service Commission ruled that the selectmen of Dedham acted without justification when they bypassed Patrolman Francis M. Bielawski, who was first on the promotional list for a vacant sergeant's position, in favor of a patrolman who was third on the list. The commission, as recounted in *Bielawski* v. *Personnel Administrator of the Div. of Personnel Admn.,* 422 Mass. 459, 460-462 (1996), ordered that Bielawski's name be placed at the top of the list for the next sergeant's opening, that the town refrain from using "impermissible reasons" for bypassing him again, and that, "if and when he is promoted to [s]ergeant, his promotion date be made retroactive to April 13, 1988," which was the date of the invalid bypass. A sergeant's position opened in 1995, and Bielawski was appointed on March 9 of that year.

The dispute before us arose when other sergeants, who had been appointed after April 13, 1988, but before March 9, 1995, objected to Bielawski's being accorded preference over them in assignment of shifts and vacation times.[1] Shift assignments and vacation assignments were controlled by provisions of the collective bargaining agreement between the town and the defendant association, which is the collective bargaining representative for the Dedham police force's superior officers. The agreement called for shift assignments and vacation assignments to be allocated according to the preferences of the sergeants themselves, with the order of selection based upon length of service in rank. The police chief received conflicting legal advice from several sources he consulted (town counsel, counsel to the Massachusetts Police Chiefs Association, and counsel to the State personnel administrator) and settled on treating April 13, 1988, as Bielawski's date of appointment within the rank of sergeant for purposes of shift and vacation selections. The association pressed the other sergeants' grievance (after rejection by the chief and by the selectmen) to arbitration, and the arbitrator upheld the grievance, ruling that Bielawski's civil service seniority was relevant only to matters governed by civil service law, such as layoffs, reemployment preferences, and promotional appointments, see note 3 below, but that, for the purpose of allocating preferences for vacation and shift assignments under the collective bargaining agreement, Bielawski's seniority dated only from March 9, 1995, the actual date of his promotion to sergeant.

The town filed a complaint in Superior Court seeking to vacate the arbitrator's award. The judge agreed with the town, ruling that the arbitrator, by ignoring the seniority accorded Bielawski under the commission's order, violated his rights under the civil service law, a law which, she reasoned, since it was not one of the statutes enumerated in G. L. c. 150E, § 7(d), prevailed over any contrary mandate based on the provisions of the collective bargaining agreement. The judge thus vacated the award, and the association appealed.

It is, of course, basic that a collective bargaining agreement may not require a result that conflicts with a mandate of State law, unless the law is listed in § 7(d). Recent discussions

[1]The affected sergeants had been appointed prior to the commission's 1991 order. See Bielawski v. Personnel Administrator of the Div. of Personnel Admn., 422 Mass. at 460-461.

include: *National Assn. of Govt. Employees* v. *Commonwealth*, 419 Mass. 448, 452-453, cert. denied, 515 U.S. 1161 (1995); *School Comm. of Natick* v. *Education Assn. of Natick*, 423 Mass. 34, 39 (1996); *Boston* v. *Boston Police Patrolmen's Assn.*, 41 Mass. App. Ct. 269, 271-272 (1996); *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 172, 180-182 (1997); *Andover* v. *Andover Police Patrolmen's Union*, 45 Mass. App. Ct. 167, 169-170 (1998). The civil service law is not one of the laws that yield to the contrary provisions of a collective bargaining agreement. *Fall River* v. *Teamsters Union, Local 526*, 27 Mass. App. Ct. 649, 651 (1989). For purposes of decision we assume, as did the judge, that an order issued by the commission under the authority of the civil service law carries the same dignity as a mandate of the statute itself and would prevail over a contrary requirement of a collective bargaining agreement. If that assumption is correct, the pivotal question concerns the commission's objective when it ordered that Bielawski be given retroactive seniority in the position of sergeant. Was it within the intended purpose of the commission's 1991 order that Bielawski be accorded preference in vacation and shift assignments over earlier-appointed officers?

The answer, we think, must be negative. The commission's order concerned seniority, but nothing in the civil service law or in any other law that has been called to our attention by the parties makes a connection between seniority and the allocation of shift and vacation assignments in a municipal police force.[2] Shift and vacation assignments relate to "hours[] and other terms and conditions of employment" within the meaning of G. L. c. 150E, § 2, and hence are mandatory subjects of collective bargaining between the town and the officers' bargaining representative. The parties to the collective bargaining agreement were free to agree to any principle they wished to govern assignments of shifts and vacations. Nothing in State law required that such assignments be governed by a system of preferences of the affected officers; nor, if the parties agreed

[2]This was the point made in a letter of advice from the then counsel to the personnel administrator, which concluded, "If Mr. Bielawski's date of promotion is determined to be March 9, 1995, for the purposes of contractual rights, there would be no conflict with civil service law." Because of the synergetic relationship between the commission and the personnel administrator, see G. L. c. 31, § 5(*a*) (establishing the personnel administrator as the commission's enforcement arm), this letter can properly be assumed to reflect the answer the commission itself would give as to the scope of its 1991 order.

that preferences would be so honored, that the preferences be allocated by seniority as contrasted, for example, with rotation, or lottery, or even alphabetical order. Moreover, if the parties should agree, as they did, on seniority as the governing principle in allocating preferences, nothing in the civil service law prevented them from agreeing to compute seniority as they should choose: whether by age, or by length of service in the force, or by length of service in rank. The point is that nothing in the law or in the commission's order constrained their choice. They were free to agree as they wished.

Here the parties to the collective bargaining agreement chose seniority in rank as the governing principle for the allocation of vacation and shift choices: more particularly, as applied to shifts, "seniority by appointment within rank and the order of appointment within rank"; and, as applied to vacations, "seniority within rank." As applied to Bielawski, these terms were ambiguous because of the seven-year difference between his imputed date of appointment as sergeant and his actual date of appointment in that rank. For purposes of civil service applications, the commission's order mandated the use of the imputed date.[3] But, because the scope of the commission's order did not extend to regulating allocation of shift and vacation preferences, the task that confronted the arbitrator was purely one of contract interpretation: What did the parties to the agreement mean when they allocated preferences by seniority in rank? As to that question, the arbitrator could reasonably have ruled either way. The significant point is that, if she ruled that the civil service date of appointment was to govern, it would not be because the civil

---

[3]The most common applications of seniority in administering civil service law concern layoffs resulting from budgetary cut-backs or reorganizations, "bumping" rights (the right of a laid-off permanent employee to displace an employee in a lower job title if that employee is junior in length of service), and rights of reemployment to vacant positions. See G. L. c. 31, §§ 39, 40. For these purposes, seniority is determined by length of service in permanent civil service employment, not by length of service in title or rank. G. L. c. 31, § 33. Seniority in rank seems to be of significance only in the context of promotional appointments, governing eligibility for promotion to the next higher job title within one's unit (G. L. c. 31, § 8), eligibility to sit for the competitive examination to establish the promotional list (G. L. c. 31, § 59), and in determining the training-experience component of the performance evaluation that is one of the weighting factors in computing final grades (G. L. c. 31, §§ 6 A-C, 9, 16, 22, 59). The authority of the commission to adjust appointment dates for remedial reasons seems to stem from St. 1976, c. 534, and St. 1993, c. 310.

service commission's order so required, but because the parties to the contract had so agreed.

For purposes of decision, we can assume that the arbitrator answered that legal question incorrectly, in the sense that she settled on an interpretation contrary to that which a court would give if it were interpreting the same bargaining agreement. Nothing is better settled, however, than that an arbitrator's interpretation of an agreement will not be overturned by a court, see *Greene* v. *Mari & Sons Flooring Co.*, 362 Mass. 560, 562-563 (1972); *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 187-188 (1984), unless the arbitrator has exceeded the scope of the reference, see *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. 788, 792 (1977), or the award violates a law. No contention is made here that the arbitrator exceeded the scope of the reference, and, as we said above, neither the law nor the commission's order is violated by a contract provision that accords vacation or shift assignments among the sergeants by actual rather than by imputed seniority in rank. Compare *Fall River* v. *Teamsters Union, Local 526*, 27 Mass. App. Ct. at 653. It follows, therefore, that the arbitrator's interpretation of the collective bargaining agreement, right or wrong, should have been allowed to stand.

The order vacating the arbitrator's award is reversed, and a new order is to be entered confirming the award.

*So ordered.*