NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1691                                      Appeals Court

    CITY OF SPRINGFIELD vs.  LOCAL UNION NO. 648, INTERNATIONAL
              ASSOCIATION OF FIREFIGHTERS, AFL-CIO.


                      No. 13-P-1691.

      Hampden.     September 11, 2014. - August 13, 2015.

         Present:  Trainor, Rubin, & Sullivan, JJ.



Fire Fighter, Appointment.  Arbitration, Fire fighters,
     Authority of arbitrator, Damages.  Labor, Fire fighters,
     Arbitration, Civil service, Damages.  Civil Service, Fire
     fighters, Appointment.  Contract, Collective bargaining
     contract.  Damages, Back pay.




     Civil action commenced in the Superior Court Department on
December 14, 2011.

     The case was heard by John S. Ferrara, J., on motions for
judgment on the pleadings; a motion for reconsideration was
heard by him; and entry of a final judgment was ordered by him.


     Albert R. Mason for the plaintiff.
     Joseph G. Donnellan for the defendant.


     RUBIN, J.  The city of Springfield (city) appeals from a

judgment of the Superior Court confirming a labor arbitration

award issued in favor of a public employee union representing

firefighters, Local 648, International Association of Firefighters, AFL-CIO (union).  We affirm.

Background.  Because the arbitration award incorporated by reference certain legal conclusions of the Civil Service Commission (commission), we first summarize the commission proceedings, followed by the arbitration proceedings.  Under the civil service law, G. L. c. 31, in order to fill a vacant position, the city may appoint either a "permanent" replacement, or, if the vacancy or the position is temporary, a "temporary" replacement.  See G. L. c. 31, §§ 6-8.  In either event, the appointment must be made through the detailed procedural steps set out in the civil service law.

As the commission ultimately found, for an extended period of time the city's appointments to vacant positions in the fire department did not comply with the above requirements.  Rather, in 2009 and 2010, the city filled certain vacancies in its fire department not by promoting firefighters, but by making extended appointments of firefighters to higher-ranking civil service positions on an "acting" basis.  These firefighters were paid additional out-of-grade compensation pursuant to the terms of art. 31 of the collective bargaining agreement (CBA) between the union and the city.  Even with this additional out-of-grade amount, their compensation and other benefits fell short of that set forth in the CBA for the positions in which they were

serving.  The city's justification for this discrepancy was that the firefighters were serving only on an "acting" basis.

On August 20, 2010, the union filed a grievance with the city on behalf of firefighters who had been appointed to fill vacant higher positions purportedly in an "acting" capacity, and who served in such higher positions.  The grievance alleged that the city's appointment practice violated the terms of the CBA. The union sought a "make whole" award of relief, one that would put the firefighters in the same position as if they had been properly appointed permanently.  The union's grievance was denied, and on November 15, 2010, the union timely filed a demand for arbitration in accordance with the provisions of their CBA.[1]

In the meantime, on September 15, 2010, the same firefighters who were the subject of the union grievance filed two appeals in their individual capacities with the commission under St. 1993, c. 310 (c. 310), contending that their "acting, out of grade" appointments violated the civil service law.[2]  On

---

[1] The city sought to enjoin the arbitration proceedings, but a Superior Court judge denied the motion for a stay.

[2] General Laws c. 150E, § 8, as amended though St. 1989, c. 341, § 80, provides, in part, "Where binding arbitration is provided under the terms of a collective bargaining agreement as a means of resolving grievances concerning job abolition, demotion, promotion, layoff, recall, or appointment and where an employee elects such binding arbitration as the method of resolution under said collective bargaining agreement, such

November 18, 2010, the commission ruled on the appeals filed with it by the individual firefighters.  The commission ruled that "nothing in the civil service law and rules recognizes the designation of 'acting' in any civil service position. . . .  In the current scenario, there can be no question, and it does not appear disputed, that Springfield's use of 'out-of-grade' promotional assignments for extended period[s] of time such as those that have occurred here, have circumvented, and continue to circumvent the civil service law."

The commission ordered that the city bring its practices "into compliance with all civil service law and rules by eliminating all 'acting' out-of-grade assignments."  The order further stated, among other things, "[t]he Commission encourages the parties to agree as to the terms of any other relief that may be appropriate to the Appellants or any other persons, including but not limited to retroactive seniority dates.  The Commission will retain jurisdiction to receive the parties['] joint motion for Chapter 310 relief,[3] or, alternatively, any

binding arbitration shall be the exclusive procedure for resolving any such grievance, notwithstanding any contrary provisions of sections thirty-seven, thirty-eight, forty-two to forty-three A, inclusive, and section fifty-nine B of chapter seventy-one."  As neither party relies on § 8, we do not address it.

[3] "If the rights of any person acquired under the provisions of chapter thirty-one of the General Laws or under any rule made thereunder have been prejudiced through no fault of his own, the civil service commission may take such action as will restore or

party's motion to reconsider whether to grant Appellants other or further relief, for which the time to so move will be tolled until January 30, 2010."  No motions described in that portion of the order were filed prior to that deadline.

On November 21, 2011, the arbitrator, relying on the commission's finding that the city had violated the civil service laws, found that the city had also violated the CBA, which provides that the city "shall recognize and adhere to all Civil Service Laws."[4]  He ordered a make-whole remedy consisting of lost wages and benefits, retroactive to August 8, 2010.[5]  In December, 2011, the city filed the instant suit to vacate the arbitration award.

Subsequently, the city moved jointly with the individual employees before the commission pursuant to c. 310 to grant retroactive seniority to each such firefighter, each to a date prior to August 8, 2010.  This motion was allowed by the commission on March 8, 2012.

---

protect such rights, notwithstanding the failure of any person to comply with any requirement of said chapter thirty-one or any such rule as a condition precedent to the restoration or protection of such rights."  St. 1993, c. 310.

[4] He found that the grievance was procedurally arbitrable.

[5] Although the commission found that the improper acting promotions dated to at least 2009, no grievance was filed until August 20, 2010.  The arbitrator limited back pay to August 8, 2010, in accordance with the CBA, which provided that a grievance was only timely as to contract violations going back twelve days before the filing of the grievance.

In October, 2012, a judge of the Superior Court entered judgment in the city's favor, but on reconsideration, in July, 2013, the judge vacated that judgment and affirmed the arbitration award. It is from this judgment that the city now appeals.

Discussion. In challenging the arbitrator's award, the city makes three arguments why it was in excess of the arbitrator's authority. The first two related arguments go to the arbitrator's authority to order the remedy he did. The third challenges the authority of the arbitrator to hear the matter in the first place.

The city's first argument is that in ordering the city to provide the individual employees back pay, overtime, and vacation pay commensurate with the positions they were required to fill on an unlawful "acting" basis, the arbitrator effectively appointed them to those positions, in violation of the civil service laws. The remedy, according to the city, thus exceeded his authority.

For its argument, the city relies on Somerville v. Somerville Mun. Employees Assn., 20 Mass. App. Ct. 594 (1985) (Somerville). In that case, the city of Somerville, like the city of Springfield in this matter, attempted to avoid the financial consequences of filling vacant positions through the procedure set out in the civil service law by appointing

employees to fill vacant higher positions on an acting basis. The union grieved this practice as a violation of the CBA, and the arbitrator ordered that for the time they had served, and would in the future serve in these acting positions, the employees had to be paid, not at the rate specified for out-of-grade work, but at the salaries provided in the CBA for the higher positions.

We explained there that the "arbitrator exceeded his authority by making an award which conflicts with the civil service law." Id. at 595. First, civil service law vests exclusive power to fill vacancies (either in a temporary or permanent capacity) in the appointing authority, in Somerville, the mayor. See id. at 597 (stating that the appointing authority "retains the sole power to decide whether to fill vacancies on either a permanent or temporary basis"). Civil service law also provides that the appointing authority must "follow the carefully prescribed requirements set forth in c. 31." Ibid. The purported appointments in an acting capacity in Somerville were made "by the chairman of the board of assessors, who is not the appointing authority," and were not made pursuant to the procedures detailed in the statute. Id. at 603. We held that "the arbitrator's award, in effect, promotes [the grievants] to higher positions in violation of the civil service law." Id. at 599.

This case, however, is inapposite.  In Somerville, the arbitrator read the CBA to allow the city to make acting appointments in the future and to require the grievants to be paid as though they had been promoted in compliance with the civil service law.  The arbitrator here has not allowed the city to continue to make "acting" appointments going forward that would effectively amount to permanent or temporary appointments that may only properly be made in compliance with G. L. c. 31; indeed, in its order issued prior to the arbitrator's decision, the commission expressly prohibited the city from making any further such acting appointments.  Rather, the arbitrator has ordered back pay, overtime, and vacation pay as a remedy for what the commission had already determined was the unlawful placement of employees to serve in acting capacities in higher positions in the past.  Rather than allowing these appointments, this solely backward-looking remedy serves, consistent with civil service law, to remedy the violation of the provision of the CBA that requires compliance with that law.

For the same reason, unlike the award in Somerville that authorized continued employment of the grievants in the higher positions without compliance with the procedures set out in c. 31, and required paying them as though they had properly been promoted, the remedial payment ordered by the arbitrator here is not "prohibited by §§ 68 and 71 of c. 31, which: (a) require

that any 'change in [a civil service employee's] duties or pay' be reported to the administrator so that a payment roster can be prepared, and (b) prohibit payment to a civil service employee whose name does not appear on the roster as lawfully in his or her position."  Id. at 603.  Again, the award here of back pay under the CBA amounts to compensation for actions found by the arbitrator to have violated the CBA.  It does not require ongoing payments for performance of a job to which the employees have not properly been appointed, and on the payment roster for which their names do not appear.

Indeed, although the city in essence argues that public policy as codified in the statutes is violated by the award, were we to accept the city's argument, it would provide a windfall for the city as a reward for its unlawful conduct and would incentivize cities and towns to utilize unlawful acting appointments for as long as they can in order to save money by underpaying those serving in those positions.  It has been almost thirty years since we wrote "the administrator and Civil Service Commission are deeply concerned about the use of so-called unauthorized 'out-of-grade' promotional appointments, whether provisional or temporary, to circumvent the requirements of the civil service law," id. at 602, yet the practice apparently continues.  We are loath to do anything that might tend to encourage it.  Because the arbitrator's award in this

case does not effectively appoint individuals to vacant positions without compliance with the civil service law, Somerville is not controlling, and the arbitrator's award was not beyond his authority.

The city's second and related argument is that because the commission prohibited appointments without compliance with the civil service laws, the arbitrator's award creates a conflict between the requirements of G. L. c. 31, §§ 68 and 71, and the requirements of the CBA. These statutes contain mandatory requirements involving reporting and preparation of rosters attendant upon civil service appointments and promotions.[6,7]  The

---

[6] "G[eneral] L[aws] c. 31, § 68, requires the appointing authority to report in writing to the administrator 'any appointment or employment, promotion, demotion, transfer, change in duties or pay, reinstatement,' and a host of other employment changes not here relevant.  Based upon these reports, G. L. c. 31, § 71, requires the administrator to prepare rosters of all civil service positions, and of all persons who are legally employed in such positions, whether on a temporary or a permanent basis. The administrator files a copy of each roster with the municipal officer responsible for paying the salaries of a municipality's civil service employees.  Section 71 expressly provides that this payment officer shall not pay any salary or compensation for service rendered in any civil service position . . . to any person whose name does not appear on the appropriate roster, as amended from time to time, as the person in such position.'" Somerville, supra at 599.

[7] The reporting requirements of §§ 68 and 71 are discussed supra.  The city essentially argues that by ordering back pay, the arbitrator legitimized appointments made in violation of the procedures provided for in §§ 68 and 71.  However because the city has retroactively promoted the employees, such argument now fails.

city notes that G. L. c. 150E, § 7, states that in case of a conflict between terms of CBA and the law with respect to certain enumerated statutes, the terms of the CBA will prevail. Since c. 31 is not one of the enumerated statutes, the city's argument goes, the statute (as it claims it was construed by the commission) must trump the CBA as construed by the arbitrator.

This second argument founders on the same shoals as the first. The premise of the argument is that the arbitrator's make-whole remedy amounted to an effective appointment of the firefighters to the jobs they had been filling in an acting capacity. Again, the arbitrator's compensatory award did no such thing.

Next, the city argues that the commission determined that the civil service statute under which the employees brought an appeal to it -- c. 310 -- did not require back pay as a remedy for the violation and that the arbitrator was collaterally estopped from awarding such relief.

The commission, however, did not decline to order a make-whole remedy or construe the statute to prohibit one. Rather, upon issuing its decision it did not announce any remedy other than ordering the city to bring its practices into compliance with the civil service law. It urged the parties to reach an agreement on relief, retaining jurisdiction either to "receive the parties['] joint motion for Chapter 310 relief or,

alternatively, any party's motion to reconsider whether to grant Appellants other or further relief, for which the time to so move will be tolled until January 31, 2010."  This is not a determination that back pay is not an appropriate award.

In the absence of a holding by the commission that the statute affirmatively prohibits a city from including a provision in a CBA that provides for back pay in a case like this, a determination by the arbitrator that the city had nonetheless bound itself contractually in the CBA to provide such a remedy in these circumstances does not create a "conflict" between the statute and the CBA.  Indeed, the decision of the commission and that of the arbitrator, who explicitly and exclusively relied upon that decision, are in harmony in finding that the city's actions violated the civil service law.

Finally, the city appears to argue that the commission has exclusive jurisdiction with respect to any remedy for the violation of the civil service laws.  That argument also fails. The city cites no authority in support of its contention that where a city binds itself by contract to comply with the civil service law, it may not be held to have breached the contract by failing to do so.  Indeed, G. L. c. 150E, § 8, quoted supra at note 2, envisions just such circumstances and indicates the availability where they occur of both a remedy before the

commission and of one under the CBA.[8]  "When possible, we attempt to read the civil service law and the collective bargaining law, as well as the agreements that flow from the collective bargaining law, as a 'harmonious whole.'"  Fall River v. AFSCME Council 93, Local 3177, AFL-CIO, 61 Mass. App. Ct. 404, 406 (2004), quoting from Dedham v. Labor Relations Commn., 365 Mass. 392, 402 (1974).  To the extent the city means to argue that the specific order of the commission in this case meant that only the commission had jurisdiction to award further relief it is incorrect.  By its terms the order merely permitted the filing before the commission of motions for further relief in the event either party chose to do so.  It did not provide that the commission's jurisdiction over further relief was to be exclusive of any otherwise available forum.[9]

Judgment affirmed.

---

[8] Because the commission's jurisdiction is not exclusive, to the extent the city renews its argument that the grievances were not arbitrable because the commission's jurisdiction is exclusive, that argument also fails.

[9] We decline the union's request for appellate attorney's fees.