## Town of North Attleboro *vs.* Labor Relations Commission.

No. 01-P-26.

Suffolk. September 11, 2002. - December 4, 2002.

Present: Greenberg, Smith, & Gelinas, JJ.

*Labor Relations Commission. Administrative Law,* Judicial review, Substantial evidence. *Public Employment,* Collective bargaining. *Labor,* Union dues.

In a proceeding brought by a firefighters' union against a town alleging a prohibited practice in the town's denial of the union's request to implement a union dues increase in an amount calculated to cover the premiums of those union members who wanted the union's dental plan, there was no substantial evidence to support the conclusion of the Labor Relations Commission that the town committed a prohibited practice by deviating unilaterally from its past practice of implementing authorized increases in union dues deductions without regard to the reason behind such increases or the ultimate purpose for which the union would spend its dues, where, although the town's action was unilateral in that it did not bargain with the union, the so-called dues "check-off" procedure for insurance was controlled by statute, G. L. c. 180, § 17J, and the town had no obligation to engage in collective bargaining as to matters controlled entirely by statute. [638-640]

Appeal from a decision of the Labor Relations Commission.

*Paul V. Mulkern, Jr.,* for the plaintiff.

*Marjorie F. Wittner* for the defendant.

Smith, J. On August 4, 1995, the North Attleboro firefighters, Local 1992, International Association of Firefighters (union) filed a charge with the Labor Relations Commission (commission) alleging that the town of North Attleboro (town) had engaged in prohibited practices in violation of G. L. c. 150E, § 10(*a*)(1), (2), and (5). Pursuant to G. L. c. 150E, § 11, the commission investigated the union's charge. On February 2, 1996, the commission issued a complaint of prohibited practices alleging that, by denying the union's request to implement an authorized union dues increase for certain bargaining unit

members, the town (1) failed to bargain in good faith, in violation of G. L. c. 150E, § 10(*a*)(5), and derivatively, § 10(*a*)(1), and (2) interfered in the administration of the union's organization by determining for the union how its dues may be used, in violation of G. L. c. 150E, § 10(*a*)(2), and derivatively, § 10(*a*)(1).

On May 8, 1996, the union and the town entered into a joint statement of agreed facts, waiving the right to an evidentiary hearing before the commission and stipulating to the contents of the record.

We recite the stipulated facts. The union is the exclusive collective bargaining representative for the town's full-time fire department employees, except the chief. The collective bargaining agreement between the town and the union required the town to deduct from the paychecks of union members weekly union dues in an amount equal to the sum set from time to time by the union. This procedure is called dues "check-off."

Since 1970, the town has routinely adjusted the union dues payroll deduction for union members when advised that a dues increase had been authorized. Prior to May 8, 1996, all dues increases that the union had asked the town to implement through payroll deductions had applied uniformly to all union members. The union was never asked by, and never provided, the town with any explanation for those dues increases, nor did it disclose to the town how it intended to spend the increased revenue that it received.

The town and the union were parties to a collective bargaining agreement covering the period July 1, 1993, to June 30, 1996. During the course of the negotiations that led up to that agreement, the union attempted, without success, to have the town agree to offer a dental insurance plan for the employees covered by the agreement.

Sometime in April of 1995, the clerk for the town's fire department filed at the town treasurer's office a list of some members of the union who wanted their weekly union dues check-off amount increased to cover the premium for a dental insurance plan that the union had implemented. Certain members would have their union dues increased by $4.38 per week (representing individual dental coverage), and other

members' union dues would be increased by $10.62 (representing family dental coverage). The remaining union members who elected not to participate in the dental plan would have their union dues deductions remain at $6.22 per week. The town treasurer was directed by the union to transmit the amounts in excess of the $6.22 weekly union dues directly to Dental Maintenance Service.

After the town administrator learned of the union's request, he contacted town counsel and inquired about the legality of the union's actions. Town counsel informed the town administrator that while G. L. c. 180, § 17J,[1] permits payroll deduction of insurance premiums by a town, the statute only allows such deductions if the insurance plan is offered by the town "in conjunction with the employee organization" that represents the employees on whose behalf the payroll deductions would be made. Because the town was not a party to the dental plan in question, town counsel reasoned that the plan was not offered "in conjunction with" the town and that, accordingly, § 17J did not authorize payroll deduction of the premium expense. As a result, the town administrator ordered the town treasurer to cease deducting the extra payments, which directive the treasurer followed.

On May 8, 1995, the union requested that the town increase weekly payroll deductions for union dues for the same union members who had previously increased their payroll deductions for the dental insurance plan. The requested amount of the increases reflected precisely the same amount of the individual or family dental insurance premiums as set forth in the previous request. The union did not request the town treasurer to transmit the amounts to anyone other than the union.

By letter dated June 6, 1995, town counsel responded to the union, stating that the town lacked statutory authorization to make a payroll deduction for dental insurance premium expenses because the dental plan in question was not being offered by the

---

[1]General Laws c. 180, § 17J, states in relevant part, "Deductions on payroll schedules may be made from the salary of any . . . municipal or other public employee of an amount which such employee may specify in writing to any . . . municipal officer . . . for any insurance or employee benefit offered in conjunction with the employee organization . . . ."

union in conjunction with the town. Such deductions, if allowed, town counsel wrote, would be a subterfuge that could have consequences for the town under the Internal Revenue Code. Finally, town counsel requested that the union confirm in writing that the proposed increase in union dues for some of the union members was not being used for the payment of their dental premiums. On June 16, 1995, the union informed the town that the purposes for which the union spent its dues was solely in its discretion and not subject to town interference. The town did not implement the new union dues schedule. The union then filed a charge with the commission alleging that the town had engaged in a prohibited practice.

In the stipulated facts before the commission, the union admitted that the union dues increase for some of its members was indeed in an amount calculated to cover the premiums of those members who wanted the union's dental plan.

The commission ruled that the town had violated G. L. c. 150E, § 10($a$)(1) and (5), by unilaterally altering the established union dues deduction practice, and violated G. L. c. 150E, § 10($a$)(1) and (2), by refusing to implement an authorized increase in union dues deductions.

On appeal, the town argues that the commission erred by issuing a complaint of prohibited practices because (1) the town did not depart from past practices when it refused to process the union's request for a selective dues increase for certain union members; (2) the town was not obligated to bargain over the union's request because, by the terms of G. L. c. 180, § 17J, it could not agree to the request and to do so would amount to a subterfuge; and (3) the town by its actions did not interfere with the union's existence or administration.

*Discussion.* Any party aggrieved by a final order of the commission may institute proceedings for judicial review in the Appeals Court. G. L. c. 150E, § 11. The scope of review of the commission's decision is defined by G. L. c. 30A, § 14. *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979).

A commission's decision must be based on substantial evidence, i.e., such evidence as "a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6).

See *School Comm. of Boston* v. *Labor Relations Commn.*, 40 Mass. App. Ct. 327, 329 (1996). In ascertaining whether a decision has such support we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as the discretionary authority conferred upon it." G. L. c. 30A, § 14. See *Commonwealth* v. *Labor Relations Commn.*, 404 Mass. 124, 127 (1989). Thus, we "generally accord considerable deference to the commission's disposition of a charge." *Boston Police Superior Officers Fedn.* v. *Labor Relations Commn.*, 410 Mass. 890, 892 (1991).

It is not disputed that the deduction of union dues from an employee's paycheck by a public employer and the transmittal of the monies so collected to the employee's union is a mandatory subject of bargaining. "Moreover, 'a unilateral change in past practice, if it bears on terms and conditions of employment, violates the duty under . . . § 10(*a*)(5) [of G. L. c. 150E] to bargain such changes collectively with the employee's representative.' " *Boston* v. *Labor Relations Commn.*, 48 Mass. App. Ct. 169, 172-173 (1999), quoting from *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 172, 177 (1997).

Here, the commission claims that there was substantial evidence to support its conclusion that the town's past practice was to implement authorized increases in union dues deductions without regard to the reason behind such increases or the ultimate purpose for which the union would spend its dues. The commission argues that because the town unilaterally changed its past practice it committed a prohibited practice pursuant to G. L. c. 150E, § 10(*a*)(5). We hold that the commission's finding is not supported by substantial evidence.

The evidence showed that for nearly thirty years the town had automatically adjusted the union dues deduction when notified of changes in union dues. When requesting those changes, the union never justified or explained those changes to the town or informed the town how the union intended to spend any dues it received.

We reject the commission's finding that it was the town that deviated from past practice; rather, it was the union that deviated from past practice. On May 8, 1995, the union changed its past practice of having the town deduct union dues in a uniform

manner as to all its members. Rather, on that date, it requested increased union dues deductions for some of its members. That fact alone would not permit the town to refuse unilaterally to deduct the increased union dues. However, coupled with the fact that the request for increased deductions from some of the union members' paychecks was for dental insurance premiums, a fact the union admitted before the commission, it was clear that the union was using the dues check-off procedure as a guise to circumvent G. L. c. 180, § 17J. In these circumstances, we do not think that it is a prohibited practice for a public employer to refuse to engage in such a subterfuge in order to evade a statute.

In so holding, we recognize that the town's action was indeed unilateral in that it did not bargain with the union. However, the dues check-off procedure for insurance benefits is controlled by G. L. c. 180, § 17J. Therefore, the town need not have bargained with the union to allow dues check-offs for dental insurance premiums because "[t]here is no obligation to engage in collective bargaining as to matters controlled entirely by statute." *Lynn* v. *Labor Relations Commn.*, 43 Mass App. Ct. at 183.

We stress that our decision is limited to the facts of this case. Generally, a public employer has no right to inquire of a union what it does with its union dues. Furthermore, a union has the right to have its own insurance programs. However, a union cannot use the dues check-off procedure, as was attempted here, to finance its own insurance programs, unless the provisions of G. L. c. 180, § 17J, have been met.

The decision of the commission is reversed.

*So ordered.*