NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, LOCAL
R1-162, vs. LABOR RELATIONS COMMISSION.

Suffolk. September 14, 1983. — March 2, 1984.

Present: HALE, C.J., CUTTER, & BROWN, JJ.

*School and School Committee*, Collective bargaining. *Labor,* Collective
bargaining. *Municipal Corporations*, Collective bargaining.

A school committee did not violate its duty to bargain in good faith by
acting to place before the voters of the town a referendum question
whether to rescind local adoption of the civil service statute without
first bargaining with a union representing affected employees of the
school committee. [544-546]

APPEAL from a decision of the Labor Relations Commission.

*Ira B. Sutton* for the plaintiff.

*Jean Strauten Driscoll* for the defendant.

BROWN, J. The plaintiff (union) filed a charge of a prohibited practice with the Labor Relations Commission (commission), alleging that the Weymouth school committee (committee) had violated G. L. c. 150E, § 10(a) (1) and (5), when it caused to be placed on a ballot during a referendum election a question which, if affirmed, would rescind the town's acceptance of civil service coverage for certain future employees of the town.

This appeal concerns a final decision of the commission which determined that the committee had not violated its duty to bargain in good faith by placing the referendum before the voters without first bargaining with the union, but had violated c. 150E, § 6, by its refusal to bargain over the *impact* of the voters' decision.[1]  One member of the

---

[1] As only the union has taken an appeal to this court, we have no occasion to review this aspect of the commission's decision.

commission dissented. The dispositive question on appeal is whether the committee violated its duty to bargain in good faith by acting to place the civil service revocation question before the voters of the town without first bargaining with the union representing the affected employees.

In December, 1980, the union notified the committee that the union wished to commence negotiations to revise the terms and conditions of the existing collective bargaining agreement. In its response, the committee indicated a willingness to commence negotiations as soon as the union was ready to do so. However, about two weeks later, on January 16, 1981, the committee, without notification to the union, requested the board of selectmen to certify a question on the ballot for a referendum election to be held on May 18, 1981. In essence, the question asked the voters of the town whether they wished to retain civil service status for certain employees of the committee who would be employed in the union's bargaining unit. The parties met and negotiated, agreeing in substance to a new collective bargaining agreement. To this point there had been no discussion of the subject of the ballot question. Upon learning of the existence of the question on the ballot, the union immediately made a written demand upon the committee: (1) to bargain with the union regarding the decision to revoke civil service rights of school custodians, the impact and implementation of such a decision, and any plan to replace civil service rights; and (2) to take the necessary action to remove this ballot question pending completion of the negotiations. Having received no response to its demands, the union filed a charge of a prohibited practice. An investigation was conducted by the commission, and, after a complaint had been issued, a formal hearing was scheduled, and the decision referred to above ensued. In the interim a majority of the voters of the town answered the question regarding revocation of civil service status in the affirmative. We affirm the commission's ruling, although on somewhat different grounds.

Pursuant to § 6 of c. 150E, inserted by St. 1973, c. 1087, § 2, a municipal employer must negotiate with the exclusive bargaining representative of its employees over "wages, hours, standards of productivity and performance and any other terms and conditions of employment." This case touches on the public employer's duty to bargain as to such mandatory bargaining issues when there is a statute which regulates these issues. Section 7(*d*) of c. 150E provides that, where there is a conflict between the terms and conditions of employment contained in a collective bargaining agreement and those contained in certain enumerated statutes, the terms of the collective bargaining agreement will prevail. Therefore, where the applicable statute covering the work relationship is listed in § 7(*d*), the parties can supersede the requirements of the listed statute through bargaining. Consequently, the existence of such a statute has no effect on the parties' duty to bargain. See *Labor Relations Commn.* v. *Natick,* 369 Mass. 431, 438 (1976).

If a statute specifically mandating certain terms and conditions of employment is not listed in § 7(*d*), the statute cannot be superseded by a bargaining agreement. See *School Comm. of Holyoke* v. *Duprey,* 8 Mass. App. Ct. 58, 64 (1979) (statute not listed in § 7[*d*] held to preempt a provision in bargaining agreement). Compare *Burlington* v. *Labor Relations Commn.,* 390 Mass. 157, 163 (1983). Where such a statute is in place, therefore, the public employer and union are incapable of amending the statute's requirements through bargaining. Consequently, neither party has a duty to bargain as to the subject matter of the statute, notwithstanding that this subject matter refers to what otherwise would be mandatory issues of bargaining. See *School Comm. of Newton* v. *Labor Relations Commn.,* 388 Mass. 557, 566 (1983) ("[a] school committee need not bargain concerning specific statutory requirements or limitations not listed in § 7[*d*]").

In the instant case, the town had previously voted to accept the provisions of the general civil service statute to cover certain town employees. See G. L. c. 31, §§ 52, 53.

Because c. 31 is not listed in § 7(*d*), the provisions of that statute cannot be superseded by bargaining while the statute is in effect. The commission reasoned that, because the union was powerless to offer the relief sought by the committee, the committee should have no duty to bargain before seeking relief from the local electorate, the one body that had authority to grant it. Particular attention must be paid to the exact nature of the violation alleged. The union is contesting the committee's failure to bargain over its decision to seek rescission of local approval of the law.

In *School Comm. of Medford* v. *Labor Relations Commn.*, 8 Mass. App. Ct. 139, 142 n.6 (1979), *S.C.*, 380 Mass. 932 (1980), we discussed the role of the school committee in the local legislative process. In stating that a school committee can agree to "use its best efforts to secure adoption of [the applicable local option law]," we recognized that initiation and support of local legislative action bearing on the terms and conditions of public employment is a permissible subject of collective bargaining. The question before us is whether, in the circumstances of this case, a committee's efforts to effect such local legislative change rose to a mandatory — and not simply a permissive — subject of bargaining.

In initiating the referendum question to rescind local adoption of the civil service statute, the committee obviously was seeking to alter the terms and conditions of employment covered by the law, many of which the commission concedes have been recognized as mandatory bargaining issues. The union argues that it must follow that the committee's efforts amounted to prohibited "unilateral action" affecting mandatory issues of bargaining. We decline to accept this reasoning.

The committee could not rescind local adoption of the civil service statute. That act was — and could only be — accomplished by the vote of the local electorate. Generally, the local legislative body has an extremely limited role in the process of determining terms and conditions of employment of public employees. Under § 7(*d*), all municipal ordinances,

by-laws, rules, and regulations are explicitly superseded by bargaining agreements as to the important, mandatory bargaining issues covered by § 6. The circumstances as to local option laws are different, however. Such laws afford the municipality significant opportunities to affect directly the terms and conditions of public employment. Where a local option law is not listed in § 7(*d*), by accepting the mandates of the law a municipality can regulate the employment relationship, as the covered subject matter is effectively removed from the bargaining table. Alternatively, once a local option law has been accepted, the municipality can in effect wipe the slate clean by rescinding the acceptance of the law, thereby throwing the covered subject matter back into the realm of bargaining.[2]

We think that the current statutory framework reveals a clear intention to commit the decision whether to offer the benefits provided by local option laws, such as the civil service statute, to the local legislative body. Certainly, it was to the committee's advantage to take this action, but that gave the committee no unfair advantage.[3] Once the question was on the ballot, the union had a fair and equal chance to persuade the electorate not to rescind adoption. The people simply chose otherwise.[4]

*Decision affirmed.*

[2] Until recently, a municipality was generally powerless to revoke acceptance of a local option law. See, e.g., *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492, 496-497 (1970). With the passage of St. 1979, c. 151, § 14, and the advent of Proposition 2½ (St. 1980, c. 580, § 5), municipalities are now empowered to rescind the adoption of local option laws as easily as they may adopt such laws.

[3] Contrast situations where an employer unilaterally exercised its power to change mandatory bargaining issues without properly first submitting those changes to bargaining. See generally *National Labor Relations Bd.* v. *Katz,* 369 U.S. 736, 743 (1962).

[4] Many municipalities have not accepted the provisions of the civil service statute. Had we reached a contrary result in the case at hand, it would follow that unions could not move for local acceptance of the civil service statute in those municipalities without first submitting a decision to do so to collective bargaining.