COMMONWEALTH EMPLOYMENT RELATIONS BOARD, COMMONWEALTH vs., 101 Mass. App. Ct. 616

 
 COMMONWEALTH vs. COMMONWEALTH EMPLOYMENT RELATIONS BOARD & another. [Note 1]

101 Mass. App. Ct. 616
 June 9, 2022 - September 2, 2022

Court Below: Commonwealth Employment Relations Board
Present: Meade, Rubin, & Sullivan, JJ.

 

No. 21-P-411.

Commonwealth Employment Relations Board. MassHealth. Commonwealth, Collective bargaining. Labor, Bargaining unit, Collective bargaining. Public Employment, Collective bargaining. Telephone. Statute, Construction. Administrative Law, Agency's interpretation of statute.

Substantial evidence supported the conclusion of the Commonwealth Employment Relations Board that the Commonwealth engaged in a unilateral change in terms and conditions of employment in violation of G. L. c. 150E, § 10 (a) (1) and (5), when MassHealth managers surreptitiously listened to employees' telephone conversations with members of the public without first providing notice to the union representing those employees, and an opportunity to bargain to resolution or impasse, where MassHealth did not utilize the telephone system's feature that enabled managers to listen to telephone calls between employees and the public prior to 2019, neither the employees nor the union were informed that managers would be listening to employees' telephone calls, and the existing policy governing the use of Commonwealth-owned devices did not state that telephone conversations would be monitored [623-625]; and where MassHealth's new practice implicated a mandatory subject of bargaining, in that it directly affected the productivity and performance measures by which employees were assessed and resulted in an increased likelihood of discipline [625-627].

Appeal from a decision of the Commonwealth Employment Relations Board.

 Cassandra Bolanos, Assistant Attorney General, for the Commonwealth.

 Lan T. Kantany for Commonwealth Employment Relations Board.

 Ian O. Russell for the intervener.

 SULLIVAN, J. The Commonwealth appeals from a decision of the Commonwealth Employment Relations Board (CERB or board), concluding that the Commonwealth engaged in a unilateral 

 Page 617 

change in terms and conditions of employment in violation of G. L. c. 150E, § 10 (a) (1) and (5), when MassHealth managers surreptitiously listened to employees' telephone conversations with members of the public without first providing notice to the intervener, AFSCME-SEIU/SEIU Local 509 (union), and an opportunity to bargain to resolution or impasse. The Commonwealth contends that CERB erred in concluding that MassHealth had engaged in a prohibited practice because it had authority to do so under existing policies and contract provisions, and the decision to use the previously unused feature of the telephone system did not impact terms and conditions of employment. We conclude that CERB's decision was supported by substantial evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

 Background. We recite the relevant facts as found by CERB based on the parties' written statements of stipulated facts and the stipulated exhibits.

 The Commonwealth, acting through the Secretary of Administration and Finance, is a public employer within the meaning of G. L. c. 150E, § 1. The Alliance, AFSCME-SEIU, AFL-CIO (Alliance) is the exclusive bargaining representative for employees in Statewide bargaining units two, eight, and ten. The union is an employee organization within the meaning of G. L. c. 150E, § 1. A member of the Alliance, the union represents employees in unit eight who hold the job title of Benefit Eligibility Referral Specialist (BERS) A/B at MassHealth. BERS D staff, who are also bargaining unit members, oversee BERS A/B staff, and all BERS staff report to team managers. BERS A/Bs are subject to performance evaluations, known as Employee Performance Reviews, and may be disciplined for performance related reasons.

 BERS A/B staff typically work in an environment akin to a call center and are assigned to cubicles. The cubicles are equipped with Commonwealth-owned computers and an integrated telephone system. BERS A/B staff answer telephone calls from members of the public who are seeking information and assistance.

 The BERS A/B staff log into the telephone system through the Commonwealth's computer system. The system tracks whether a BERS A/B's telephone line is busy or available to take the next call in the queue. A dashboard shows managers status indicators that include "Ready," "Talking," "Not Ready," and "On Hold," and the duration of the status.

 In early 2019, MassHealth officials monitoring the dashboard noticed what they believed was a high volume of calls with low 

 Page 618 

call duration. During February and March 2019, MassHealth began an investigation into the conduct of specific BERS A/Bs. MassHealth did not inform the union (or the BERS A/Bs) of the investigation.

 Unlike many call centers, MassHealth does not record customer calls. Before February 2019, MassHealth had not used a feature of its telephone system that permitted team managers to listen to telephone calls without the knowledge of the BERS A/Bs (or the callers). [Note 2] When the investigation began, MassHealth managers listened to telephone calls between the identified BERS A/Bs and members of the public and took notes. MassHealth did not provide notice to the union that managers would be listening to telephone calls between BERS A/Bs and members of the public.

 On or around April 20, 2019, MassHealth directed eleven BERS A/B staff to attend investigatory interviews. During one of the investigatory interviews the union learned that MassHealth had been listening to calls. Between June and August 2019, MassHealth disciplined eleven BERS A/Bs. [Note 3] The union grieved all eleven disciplinary actions.

 No BERS A/Bs had been disciplined for their handling of telephone calls in the past. Nor had any BERS A/Bs been disciplined based upon review or monitoring of "status indicators" related to the employees' call status or the passing observations of managers. [Note 4] MassHealth had received complaints about the conduct of BERS A/Bs from the public and informed the relevant BERS A/B staff member, but MassHealth had not pursued discipline.

 On May 24, 2019, the union filed a charge of prohibited practice with the Department of Labor Relations (DLR) alleging that the Commonwealth, via MassHealth, had engaged in prohibited practices in violation of G. L. c. 150E, § 10 (a) (5), and, derivatively, § 10 (a) (1), when MassHealth managers monitored BERS A/B telephone calls without first providing the union with notice and an opportunity to bargain to resolution or impasse. The DLR issued a complaint of prohibited practice on September 13, 2019, alleging that by monitoring telephone calls, the Commonwealth "had changed the criteria by which it evaluates productivity and performance and imposes discipline without giving the union prior notice and an opportunity to bargain to resolution or impasse about the decision and the impacts of its decision in violation of [§ 10 (a) (5)]." Pursuant to 456 Code Mass. Regs. § 13.03(1)(b) (2016), the Commonwealth filed a petition, which CERB granted, requesting that CERB decide the matter on a stipulated record in the first instance. [Note 5]

 MassHealth claimed, as it does here, that the monitoring of the telephone calls was permitted under applicable policies and the collective bargaining agreement (CBA). When BERS A/Bs log in to the Commonwealth's computers, BERS A/Bs receive a notification of "Authorized Use of Information System Resources." [Note 6] 

 Page 620 

The notice refers to an "Acceptable Use Policy" and a memo on the "Use of EOHHS and Personal Technology Resources" promulgated by the Executive Office of Health and Human Services, which includes MassHealth. [Note 7] CERB also found that "[o]n November 2, [2015], MassHealth Manager Rick Wilson sent a memo to 'MassHealth Operations Staff,' regarding 'Use of EOHHS and Personal Technology Resources.' This memo 

 Page 621 

reiterated various aspects of the technology notifications set forth [in the margin]. It also attached the 'EOHHS agreement,' which was identical to the first paragraph of Article 28 of the CBA."

 Article 28 of the CBA provides, in pertinent part:

"The parties specifically agree that all hardware, software, databases, communications networks, peripherals, and all other electronic technology, whether networked or free-standing, is the property of the Commonwealth and is expected to be used only as it has in the past for official Commonwealth business. Use by employees of the Commonwealth's technological resources constitutes express consent for the Commonwealth and its Departments/Agencies to monitor and/or inspect any data that users create or receive, any electronic mail messages they send or receive, and any web sites that they may access. The Commonwealth retains, and through its Departments/Agencies, may exercise the right to inspect and randomly monitor any user's computer, any data contained in it, and any data sent or received by that computer.

". . .

"The terms of this Section do not alter current practice regarding employee use of telephones.

". . .

"This shall not infringe upon any rights within . . . G. L. c. 150E or any other right legally granted to employees." (Emphasis added.)

 MassHealth also claimed that the monitoring did not alter terms and conditions of employment because it was simply a more dependable and reliable way of collecting information that it had informally collected before.

 On March 8, 2021, CERB issued a decision (one member dissenting) in which it concluded that the Commonwealth engaged in an unlawful unilateral change in terms and conditions of employment in violation of G. L. c. 150E, § 10 (a) (1) and (5), when it initiated the practice of surreptitiously listening to employees' telephone conversations with the public without first notifying the union and providing an opportunity to bargain to resolution or impasse. It ordered MassHealth to restore the status quo ante by ceasing the monitoring of calls until such time as the 

 Page 622 

union was notified and the parties had bargained to resolution or impasse, to rescind all discipline, and to make the impacted employees whole.

 In support of its decision CERB found not only that the practice was new, but that listening to telephone calls in this manner had an impact on the underlying conditions of employment, thereby implicating a mandatory subject of bargaining, because MassHealth managers changed the nature, quantity, and quality of information available to them. CERB reasoned that "surreptitiously listening in to phone conversations through the previously unused feature of MassHealth's phone system changed both the type and amount of information available to managers, including in particular whether the BERS A/B actually ever spoke to or assisted the caller. It also increased employees' chances of being disciplined, as demonstrated by the suspension letters . . . and the undisputed fact that, prior to listening in on employee phone conversations, the Commonwealth had not disciplined employees for their conduct during phone calls, despite receiving customer complaints."

 CERB rejected MassHealth's claim that the monitoring was permitted under the CBA and existing policy. It found that the Acceptable Use Policy did not contain any language stating that telephone calls would be monitored, and that Article 28 of the CBA contained an express carve-out for the current practices regarding employee use of the telephone system. It also rejected MassHealth's claim that the monitoring was nothing more than an altered procedural mechanism for enforcing existing work rules, and that MassHealth had an unfettered right to conduct investigations by any means. The Commonwealth timely appealed.

 Discussion. 1. Standard of review. We review CERB's decision in accordance with G. L. c. 30A, § 14, and G. L. c. 150E, § 11. See Boston v. Commonwealth Employment Relations Bd., 453 Mass. 389, 395 (2009). A "final administrative agency decision will be set aside if, among other grounds, it is '[u]nsupported by substantial evidence,' G. L. c. 30A, § 14 (7) (e), or '[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law,' G. L. c. 30A, § 14 (7) (g)." Commissioner of Admin. & Fin. v. Commonwealth Employment Relations Bd., 477 Mass. 92, 95 (2017). "A commission's decision must be based on substantial evidence, i.e., such evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" Newton v. Commonwealth Employment Relations Bd., 100 Mass. App. Ct. 574, 

 Page 623 

579 (2021), quoting North Attleboro v. Labor Relations Comm'n, 56 Mass. App. Ct. 635, 638 (2002).

 The reviewing court "must accord deference to the [board's] specialized knowledge and expertise, and to its interpretation of the applicable statutory provisions." Worcester v. Labor Relations Comm'n, 438 Mass. 177, 180 (2002). As we "generally accord considerable deference to the [board's] disposition of a charge" (citation omitted), North Attleboro, 56 Mass. App. Ct. at 639, "[w]e will only set the board's decision aside if the record points to an overwhelming probability of the contrary" (quotation and citation omitted). Anderson v. Commonwealth Employment Relations Bd., 73 Mass. App. Ct. 908, 910 (2009). A reviewing court is "not entitled to substitute [its] judgment on these matters for that of the commission on the basis of evidence in the record that might have warranted a contrary conclusion." School Comm. of Newton v. Labor Relations Comm'n, 388 Mass. 557, 573 (1983). "However, the duty of statutory interpretation rests ultimately with the courts." Somerville v. Commonwealth Employment Relations Bd., 470 Mass. 563, 568 (2015).

 "[A] public employer violates G. L. c. 150E when it unilaterally changes an existing condition of employment or implements a new condition of employment concerning a mandatory subject of bargaining without first providing the union with notice and an opportunity to bargain to resolution or impasse." Newton, 100 Mass. App. Ct. at 579. As there is no dispute that the Commonwealth utilized the telephone system's listening feature without prior notice to the union or an opportunity to bargain, we focus our analysis, as did CERB, on whether MassHealth implemented a new practice that concerned a mandatory subject of bargaining.

 2. New practice. The Commonwealth maintains that CERB's determination that MassHealth unlawfully instituted a new practice by monitoring telephone calls was unsupported by substantial evidence because MassHealth retained the authority to monitor telephone calls using the telephone system's technology, and staff and the union were on notice that the use of technological equipment was subject to monitoring.

 Substantial evidence supports CERB's determination that MassHealth instituted a new practice by surreptitiously monitoring BERS A/B telephone calls with the public. It is undisputed that prior to 2019, MassHealth did not utilize the telephone system's feature that enabled managers to listen to telephone calls between BERS A/B staff and the public. Neither staff members 

 Page 624 

nor the union were informed that MassHealth managers would be listening to staff members' telephone calls. As of the date of CERB's decision, this was the first and only instance of surreptitious monitoring of telephone calls. [Note 8]

 The Commonwealth maintains that because the calls must be answered while connected to the computer, the BERS A/Bs were on notice each time they logged in that the Acceptable Use Policy was applicable to the telephone system as well as the computer system. Under the Acceptable Use Policy, the term "device" was defined to include telephones. The Commonwealth maintains that by virtue of this definition, use of the telephones was swept within the Acceptable Use Policy and all of its provisions regarding monitoring.

 However, as CERB found, the policy does not state that telephone conversations would be monitored. When references are made to monitoring of the computer system in the login notice and the policy, the examples that immediately follow pertain to data maintained on the system, not the use of telephones. For example, the login notice that appears on the BERS A/B screen states that use of the computer system constitutes consent to "monitoring inspection and/or copying of all information that you create or receive including any messages you send or receive and any web sites you visit." See note 6, supra. Similarly, the policy states: "Your use of EOHHS Information Resources may be monitored, recorded, and audited." However, the examples that follow refers to documents and communications stored on the server: "EOHHS has the right to review your files and emails at any time and for any reason without your prior consent." See note 7, supra. CERB's finding that the notice and the policy did not place the union on notice that surreptitious monitoring of telephone calls could be conducted at any time was supported by the stipulated record.

 We also owe deference to CERB's "special expertise" in the 

 Page 625 

interpretation of the CBA in light of the facts found. Everett v. Local 1656, Int'l Ass'n of Firefighters, 411 Mass. 361, 368 (1991). The provision of Article 28 of the CBA upon which CERB relied states that the provision "do[es] not alter current practice regarding employee use of telephones." This language once again highlights the distinction between data, such as e-mail messages and documents, stored in the computer system, as opposed to the telephone calls made on the system, and exempts telephone use from the otherwise comprehensive language of Article 28. On this record, the only evidence of the "current practice regarding employee use of telephones" at the time this case arose is that MassHealth did not surreptitiously monitor BERS A/B telephone calls. CERB did not act in an arbitrary or capricious manner when it concluded that the parties had bargained to preserve the "current practice" with respect to the use of telephones. Nor can it be said that the Commonwealth carried its burden to show that there was a clear and unmistakable contractual waiver of the right to bargain over the monitoring of BERS A/B telephone calls. See School Comm. of Newton, 388 Mass. at 569 (broad management rights clause did not constitute waiver of right to bargain over layoffs where union was not on notice of impending layoffs when contract was negotiated). [Note 9] See also Newton, 100 Mass. App. Ct. at 586-587 (no waiver by virtue of policy or city ordinance).

 3. Mandatory subject of bargaining. The Commonwealth contends that MassHealth had no duty to bargain with the union because the practice of monitoring telephone calls did not affect the terms and conditions of employment and was instead a procedural modification of the techniques used to enforce existing work rules regarding the quality of service provided to customers. In rejecting this argument, CERB found that, although BERS A/B staff were required to provide quality customer service to callers, MassHealth managers did not previously monitor the employees' conversations with customers or require employees to provide details about the calls. Therefore, the type and amount of information the managers accessed by listening in on the telephone conversations expanded the amount of information 

 Page 626 

available to MassHealth, resulting in discipline. CERB's factual findings are supported by the record. "We accept these determinations." Everett v. Labor Relations Comm'n, 416 Mass. 620, 627 (1993).

 With these factual findings as our baseline, we turn to the applicable law. "Public employers are required to 'negotiate in good faith with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment.'" Newton, 100 Mass. App. Ct. at 579, quoting G. L. c. 150E, § 6. CERB's legal conclusion that the surreptitious monitoring of telephone calls changed terms and conditions of employment because it directly implicated the "productivity and performance" measures by which the employees were assessed, and resulted in an increased likelihood of discipline, was not arbitrary or capricious or an abuse of discretion. Id.

 The reasoning of CERB's decision stands firmly on solid ground in light of the specific language in G. L. c. 150E, § 6, that references standards, productivity, and performance. [Note 10] We further note that the National Labor Relations Board (NLRB) and the Federal Courts of Appeals that have considered the question likewise conclude that a new or altered practice of surreptitious monitoring of employees that increases the amount of information available to the employer and increases the likelihood of discipline constitutes an unlawful unilateral change in terms and conditions of employment in the absence of a clear and unmistakable contractual waiver or notice to the union and an opportunity to bargain to resolution or impasse. See Brewers & Maltsters, Local Union No. 6 v. National Labor Relations Bd., 414 F.3d 36 (D.C. Cir. 2005) (installation of hidden camera in breakroom); National Steel Corp. v. National Labor Relations 

 Page 627 

Bd., 324 F.3d 928 (7th Cir. 2003) (hidden cameras); Colgate-Palmolive Co., 323 NLRB 515 (1997) (hidden cameras); BP Exploration of Alaska, Inc., No. 19-CA-29566, NLRB Advice Memo (July 11, 2005) (installation of vehicle data recorders on trucks constituted unilateral change in terms and conditions of employment because it provided employer with "far more information about employee driving behaviors" than it previously had been able to obtain by radar or personal observation). [Note 11]

 Conclusion. The decision and order of the board is affirmed.

 So ordered.

FOOTNOTES
[Note 1] Service Employees International Union, Local 509, intervener. 

[Note 2] The managers listening to the calls were not in the same room as the BERS A/Bs. 

[Note 3] MassHealth claims that the BERS A/Bs placed the calls on mute, creating the appearance that they were servicing callers when they were not, and ultimately causing the callers to hang up. The union denies the allegations. The merits of the dispute are not before us. 

[Note 4] Team managers were able to observe BERS A/Bs as they took telephone calls if the manager was nearby. 

[Note 5] Before granting the request, CERB requested and received supplementation of the record regarding the past use of the monitoring technology and past discipline. 

[Note 6] The following message appears on the screen: 

"This computer and all related equipment and information system resources are the property of the Commonwealth and are provided only for authorized use by EOHHS users. EOHHS users must use Commonwealth information system resources in compliance with applicable EOHHS as well as Executive Office for Administration and Finance and Executive Office of Technology Services and Security confidentiality, privacy, and security policies and standards. You are responsible for maintaining the privacy of your authentication information and any data you access and/or use in the course of your work. You may not share your authentication information under any circumstances and may not share data outside of the scope of your authority. Use of the Commonwealth's information system resources outside the scope of your authority or any manner contrary to EOHHS, ANF and EOTSS policies and standards are subject to discipline up to and including termination of employment. If you violate state or federal law when using EOHHS information system resources, you may be subject to criminal investigation and prosecution or civil monetary penalties. Network administrators routinely monitor system activity in order to ensure the confidentiality, integrity, and availability of the EOHHS's information systems. Your use of EOHHS's computers and/or e-mail and/or internet access and/or any other electronic information system resources constitutes your express consent to monitoring inspection and/or copying of all information that you create or receive including any messages you send or receive and any web sites you visit.

"By using this computer or other Commonwealth information resources, you expressly agree to abide by the requirements of the EOHHS Acceptable Use Policy, originally published on January 11, 2018." (Emphasis added.)

[Note 7] The Acceptable Use Policy referenced in the notice and the parties' stipulation states in pertinent part: 

"This Policy applies to all Users of EOHHS Information Resources. In furtherance of your job duties, you may be required or requested to access EOHHS Information Resources and only for the purpose of completing such duties. Your use of EOHHS Information Resources may be monitored, recorded, and audited. EOHHS has the right to review your files and emails at any time and for any reason without your prior consent. Especially when using Technical EOHHS Information Resources, you should have no expectation of privacy. Unauthorized or improper use of EOHHS Information Resources may result in disciplinary action, as well as civil and criminal penalties.

". . .

"By using an EOHHS Information Resource, you agree to the terms of this Policy.

". . .

"ACCEPTABLE USE

". . .

"EOHHS Information Resources are the property of EOHHS and the Commonwealth. EOHHS owns the data created or stored on these systems, including all email messages and the information they contain. You do not own Information Resources on the EOHHS Network and should have no expectation of privacy in those Information Resources.

". . .

"EQUIPMENT

". . .

"You must abide by all policies and procedures related to the use of Devices and other office equipment. . . . Your use of Devices and office equipment may be monitored, recorded, and audited. EOHHS has the right to review any information accessed, stored, printed, copied or otherwise utilized on Devices or other office equipment at any time or for any reason."

[Note 8] The Commonwealth's argument that the stipulations do not provide substantial evidence when viewed with other evidence that detracts from the weight of the evidence is unpersuasive. The stipulations support the finding that, although MassHealth had a system to monitor telephone calls, managers did not listen in on telephone calls prior to 2019. More importantly, it is for CERB to weigh the evidence and apply its expertise. It is not for this court to find facts or substitute its judgment on matters committed to the expertise of the board where the "decision [is] based on substantial evidence, i.e., such evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" Newton, 100 Mass. App. Ct. at 579, quoting North Attleboro, 56 Mass. App. Ct. at 638. 

[Note 9] The parties here agreed to a management rights clause in Article 2 of the CBA, "Managerial Rights/Productivity." The clause begins with the statement, "Except as otherwise limited by an express provision of this Agreement, . . . ." As CERB construed it, Article 28 of the CBA constituted an express limitation on management rights because it provided that the parties would not alter the "current practice regarding employee use of telephones." 

[Note 10] CERB relied on its decision in City of Springfield, 41 M.L.C. 383 (2015), in which it ruled that the clandestine installation of global positioning system tracking devices on trucks driven by employees violated G. L. c. 150E, § 10 (a) (1) and (5). The Commonwealth contends that CERB's reliance on Springfield was misplaced, and that it should have followed its decision in Duxbury Sch. Comm., 25 M.L.C. 22 (1998), in which the Labor Relations Commission ruled that the installation of a single pole camera in a parking lot to monitor drivers' comings and goings did not alter the working conditions of the employee truck drivers. Neither of these decisions is binding on us or controlling here, nor was either one appealed to us, and we therefore express no opinion on their correctness. We do note, however, that all of these cases are highly fact specific, and that, having reviewed both the Duxbury and Springfield cases, the distinction drawn by CERB between the cases is reasonable. 

[Note 11] Because G. L. c. 150E is modeled on the National Labor Relations Act (NLRA) in material respects, CERB looks to decisions and guidance of the NLRB in appropriate cases, as do we. See Fowler v. Labor Relations Comm'n, 56 Mass. App. Ct. 96, 100 (2002). Of particular interest in this case is the fact that the cognate provision of the NLRA refers to "wages, hours, and other terms and conditions of employment" generally. See 29 U.S.C. § 158(d). By contrast, our State public employee collective bargaining statute contains a specific reference to "standards or productivity and performance," as well as "any other terms and conditions of employment." See G. L. c. 150E § 6. This language suggests a strong legislative intent favoring bargaining over the decision to implement such a change (absent a claim of nondelegable duty), as well as the effects of such a change on standards or the assessment of productivity and performance. See Newton, 100 Mass. App. Ct. at 579. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.